Marvelle J. "Jay" Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, pro se

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARVELLE J. "JAY" BALLENTINE     )   Case No.: 3:25-cv-07671-CRB

             Plaintiff,       )

     vs.                    )

META PLATFORMS, INC., and
ACCENTURE LLP             )

           Defendant(s)    )

**PLAINTIFF'S OPPOSITION TO ACCENTURE LLP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date:     January 30, 2026
Time:    10:00 a.m.
Judge:    Hon. Charles R. Bryer
Dept:     Courtroom 6—17th Fl
          San Francisco

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court deny Accenture LLP's Motion to Dismiss the First Amended Complaint in its entirety.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should deny Accenture LLP's Rule 12(b)(6) motion because the First Amended Complaint plausibly alleges that:

1.    The § 1981 claim is timely under 28 U.S.C. § 1658 and the remaining federal claims are not time-barred on the face of the pleadings (with the UCL timely under Cal. Bus. & Prof. Code § 17208);

2.    Accenture's identity-visible final review and routing at the enforcement chokepoint are a but-for and proximate cause of the injury;

3.    Intent and disparate treatment are plausibly inferred from the pleaded sequence and comparator treatment;

4.    § 230(c)(1) does not apply to Accenture's own enforcement conduct and § 230(c)(2) "good faith" cannot be resolved on the pleadings;

5.    state action is adequately alleged under § 1983;

6.    a § 1985(3) conspiracy is sufficiently pled; and

7.    the UCL claims (unlawful/unfair/fraudulent) and requested equitable relief may proceed.

PLAINTIFF'S OPPOSITION TO ACCENTURE LLP MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

RELIEF REQUESTED ......................................................................................... 2

INTRODUCTION ................................................................................................ 3

I. WHAT ACCENTURE DOES NOT DENY (CONTROLLING AT RULE 12) ..................... 5

II. THE WELL-PLEADED ALLEGATIONS FORECLOSE DISMISSAL ............................. 6

III. LEGAL STANDARD & RECORD SCOPE ......................................................... 8

IV. ACCENTURE'S "ADVERTISEMENTS" / "OTHER STANDARDS" THEORIES ARE

    EXTRA-PLEADING AND CANNOT DEFEAT THE FAC AT RULE 12 ........................ 9

V. ARGUMENT .............................................................................................. 10

    Statute of Limitations………………………………………………….…………10

    Causation……………………………………………………………………………12

    Intent & Comparator Allegations………………………………………………13

    Section 230 Does Not Apply………………………………………………….……15

    § 230(c)(2) "Good Faith" Is Fact-Intensive……………………………….………15

    § 1983 (State Action)……………………………………….…………………………16

    § 1985(3) (Conspiracy)……………………………………….………………………17

VI. PROCEDURAL NOTES / HEARING FRAME .................................................. 21

VII. REMEDY & RELIEF ................................................................................ 21

VIII. CONCLUSION ...................................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224 (9th Cir. 1988) ................................ 21

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................ 6, 7, 13, 18, 21

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ............................................... 6, 7, 13, 16, 21

Blair v. Rent‑A‑Center, Inc., 928 F.3d 819 (9th Cir. 2019) ...................................................... 20

Bostock v. Clayton County, 590 U.S. 644 (2020) ..................................................................... 12

Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001) ................. 14

Cervantes v. City of San Diego, 5 F.3d 1273 (9th Cir. 1993) ........................................... 11, 21

Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327 (2020) ............... 8, 12

Coto Settlement v. Eisenberg, 593 F.3d 1031 (9th Cir. 2010) .................................................... 8

Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152 (9th Cir. 2012) ........................................... 19

Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) .................................................................... 14

Doe v. Internet Brands, Inc., 824 F.3d 846 (9th Cir. 2016) .............................................. 15, 22

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) ......................... 20, 21

Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157 (9th Cir. 2008) (en banc).... 15, 22

Foman v. Davis, 371 U.S. 178 (1962) ....................................................................................... 21

FTC v. LeadClick Media, LLC, 838 F.3d 158 (2d Cir. 2016) ................................................ 15

Gilbrook v. City of Westminster, 177 F.3d 839 (9th Cir. 1999) .............................................. 18

Griffin v. Breckenridge, 403 U.S. 88 (1971) ........................................................................... 19

O'Handley v. Weber, 62 F.4th 1145 (9th Cir. 2023) ................................................................ 17

Hinojos v. Kohl's Corp., 718 F.3d 1098 (9th Cir. 2013) ......................................................... 20

Johnson v. Lucent Techs., Inc., 653 F.3d 1000 (9th Cir. 2011) ................................................. 8

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) ..................................................... 12

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018) ...................... 6, 7, 8, 9, 21

Kirtley v. Rainey, 326 F.3d 1088 (9th Cir. 2003) .............................................................. 16, 17

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) ............................ 6, 7, 21

Lemmon v. Snap, Inc., 995 F.3d 1085 (9th Cir. 2021) .................................. 15, 22

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc) ................................. 21

Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718 (9th Cir. 2007) ........................... 20, 21

Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025 (9th Cir. 2008) .................... 6, 7

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ................................ 14

Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283 (9th Cir. 1999) ..................... 18

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) ....................................... 6

Owens v. Okure, 488 U.S. 235 (1989) ............................................ 11

Poland v. Chertoff, 494 F.3d 1174 (9th Cir. 2007) .................................. 13

Scott v. Ross, 140 F.3d 1275 (9th Cir. 1998) .................................. 18, 19

Sonner v. Premier Nutrition Corp., 971 F.3d 834 (9th Cir. 2020) ........................... 20

Staub v. Proctor Hosp., 562 U.S. 411 (2011) .................................. 13

Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011) ........................... 7, 8, 13, 14, 22

Supermail Cargo, Inc. v. United States, 68 F.3d 1204 (9th Cir. 1995) ............... 11, 21

United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003) ........................ 8, 9

United States v. Rosenow, 50 F.4th 715 (9th Cir. 2022) ........................ 17

Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013) .................... 12

Vasquez v. Cnty. of Los Angeles, 349 F.3d 634 (9th Cir. 2003) ................ 14

Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977) ........... 14

Wilson v. Garcia, 471 U.S. 261 (1985) .................................. 11

**Statutes & Rules**

18 U.S.C. § 2258A .................................. 16

28 U.S.C. § 1658 .................................. 11

42 U.S.C. § 1981 .................................. 11

42 U.S.C. § 1981(b) .................................. 11

42 U.S.C. § 1982 .................................. 11

42 U.S.C. § 1983 ................................................................................................ 16, 17

42 U.S.C. § 1985(3) ...................................................................................... 18, 19, 20

47 U.S.C. § 230(c)(1) .............................................................................................. 16

47 U.S.C. § 230(c)(2)(A) .......................................................................................... 4

Cal. Bus. & Prof. Code § 17208 .............................................................................. 11

Cal. Civ. Proc. Code § 335.1 ................................................................................... 11

Fed. R. Civ. P. 12(d) ................................................................................................. 9

**INTRODUCTION**

Accenture, a United States federal contractor, moves to dismiss a complaint that it refuses to acknowledge because acknowledging the one that does would require confronting what it did on July 4, 2022: Independence Day. In the digital age, no accusation follows a person like child exploitation. It destroys livelihoods instantly, severs business relationships permanently, and brands individuals with scarlet letters that no amount of truth can erase. Accenture understood this when their reviewer looked at Plaintiff's passport photo, saw his Black face, and chose to wield this devastating weapon while knowing, as they later admitted, that no violation existed. The same company that was reversing CSE designations for innocent users in record numbers during Q3 2022 (4,000 to be exact) denied rectification to one Black entrepreneur whose only "violation" was his visibility. When the most nuclear accusation in modern discourse can be deployed by those who see race, confirmed by those who know it's false, and immunized by those who call it "content moderation," the question before this Court transcends one man's business. The question has now become: Has Section 230 granted Accenture and Meta immunity to hang digital signs; "rectification and restoration of rights for whites only?" Has Silicon Valley's Section 230 immunity created the digital Jim Crow?

**The Well-Pled Allegations Foreclose Dismissal**

Accenture's motion fails because it argues against a complaint that does not exist. The First Amended Complaint alleges:

1.    Accenture conducted final human review of CSE designations with authority to reject or affirm them (FAC ¶¶37-41, 50-51, 76-77, 126). Accenture recasts this as mere "appeals" processing.

2.    Accenture's reviewers could see race through user profile photos and government-issued identification at the moment of enforcement decision (FAC ¶¶106-108). Accenture now claims uncertainty about what its own reviewers could see.

3.    The comparators proceeded through vendor-staffed review queues—the same queues Accenture staffed with 5,800 reviewers (FAC ¶¶63-67, 104). Accenture claims the complaint "says nothing" about its review of these accounts.

PLAINTIFF'S OPPOSITION TO ACCENTURE LLP MOTION TO DISMISS FIRST AMENDED COMPLAINT

4.      No CyberTipline report was filed because no violation existed—a fact Accenture now admits. Yet Accenture seeks Section 230(c)(2) protection for "good faith" removal of content it concedes was not violative.

These are not legal conclusions. They are factual allegations that, accepted as true under Rule 12(b)(6), state claims for racial discrimination under 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3).

**Section 230 Cannot Immunize Bad Faith**

Section 230(c)(2) protects only "good faith" content moderation. 47 U.S.C. § 230(c)(2)(A). Accenture's evolving position destroys any claim to good faith:

*First MTD (Oct. 16):* Suggests Plaintiff's content warranted CSE enforcement, leaving the implication of impropriety hanging in the public docket.

*Email Clarification (Oct. 24):* When confronted, admits "the complaint adequately alleges...there was no CSE violation."

*Second MTD (Oct. 31):* Now invents "a legitimate violation of another community standard unrelated to CSE"—a violation never identified, never explained, appearing only after Plaintiff exposed the CSE designation as pretextual.

This progression—insinuation, retreat, fabrication—is the antithesis of good faith. A defendant cannot claim Section 230 immunity while simultaneously (1) admitting it knew no CSE violation existed, (2) affirming the CSE designation anyway, and (3) manufacturing post-hoc justifications when challenged. Section 230 was enacted to encourage legitimate content moderation, not to immunize racial discrimination dressed as child safety enforcement.

**The Pattern Establishes Plausibility**

The discrimination pattern is precise:

*July 4, 2022 — before any ID request:* Plaintiff's profile photo, displaying his Black face, was visible to the enforcement reviewer (FAC ¶107).

*Same day:* Meta requested government ID; Plaintiff submitted his U.S. passport (FAC ¶108).

*Same day:* An Accenture reviewer—viewing Plaintiff's profile photo and passport—affirmed the CSE enforcement within hours (FAC ¶¶50–51, 108).

*No NCMEC report:* The matter was routed through a workflow that did not result in a report to NCMEC (FAC ¶51).

*The disparity:* White comparators were restored; Black plaintiff remained permanently banned (FAC ¶¶63–67).This is not speculation requiring "inference upon inference" as Accenture suggests. It is a straightforward allegation: Accenture saw race, Accenture made a decision, similarly situated white users were treated differently. Under *Twombly* and *Iqbal*, these facts cross "the line from conceivable to plausible." 550 U.S. at 570.

**Accenture Cannot Rewrite the Complaint**

Accenture's motion systematically mischaracterizes the First Amended Complaint to manufacture deficiencies:

*On timeliness***:** Accenture ignores continuing violations through April 2025 (FAC ¶¶85-92)

*On causation***:** Accenture ignores its final review authority that controlled outcomes (FAC ¶¶37-41)

*On animus***:** Accenture ignores that visibility of race combined with disparate treatment supports inference of discrimination (FAC ¶¶106-108, 63-67)

The Court must accept Plaintiff's allegations, not Accenture's revisions.

**The Question Before the Court**

When federal contractors exercise discretion to confirm false accusations of child exploitation after viewing users' racial characteristics, while its client systematically restore similarly situated white users, do the Civil Rights Acts yield to corporate immunity claims, or does the Constitution's promise of equal protection extend to the digital town squares where modern commerce lives or dies?

The Civil Rights Acts answer no. Section 230 provides no shelter for racial discrimination. Rule 12(b)(6) requires accepting these allegations as true.

The motion should be denied.

**I.    What Accenture Does Not Deny (controlling at Rule 12)**

At Rule 12(b)(6), the Court accepts well-pled factual allegations as true, draws reasonable inferences in Plaintiff's favor, and does not resolve factual disputes or weigh competing

explanations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Applying that standard, Accenture's motion does not squarely deny four material allegations in the FAC; for purposes of this motion, the FAC's allegations control. See *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## A.    Final-step routing at the chokepoint.

The FAC alleges that Accenture performed the final human review and executed the routing determination—whether a matter proceeded to NCMEC reporting or into a non-report workflow—placing Accenture at the operational chokepoint that drove the outcome. Accenture's motion does not squarely deny this chokepoint allegation. See FAC ¶¶ 35, 37–41, 76–77, 126.

## B.    Race visibility at the decision point.

The FAC alleges that, at the time of the final review, Accenture's reviewer had access to Plaintiff's profile photo and government-issued ID, making race visible, and that the enforcement outcome was affirmed within hours of that visibility. See FAC ¶¶ 39–41, 50–51, 107–108.

## C.    No CyberTip/NCMEC report following a CSE label.

The FAC alleges that despite Meta's invocation of its CSE policy, no CyberTip/NCMEC report issued in Plaintiff's case. That pleaded non-report supports the inference of pretext and squarely disputes any claim of "good faith" moderation for § 230(c)(2) purposes at this stage. See FAC ¶¶ 51, 97–101; *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019)

## D.    Accenture's litigation position confirms a factual dispute.

For purposes of this motion, Accenture accepts that there was no CSE violation, while pivoting to an unspecified "other standards" rationale—creating a merits dispute inappropriate for resolution on a Rule 12(b)(6) motion. See *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003–04 (9th Cir. 2018) (courts do not resolve factual disputes or credit extra-pleading hypotheses at Rule 12).

## II.    The Well-Pleaded Allegations Foreclose Dismissal

At Rule 12(b)(6), the Court accepts well-pleaded factual allegations as true, draws reasonable inferences in the plaintiff's favor, and does not resolve factual disputes or credit extra-pleading theories to contradict the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Where defendants propose competing factual explanations, dismissal is improper so long as plaintiff's well-pleaded account is plausible. *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011). And defendants may not use materials outside the pleadings to contradict the FAC at this stage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### A.    The enforcement pipeline alleged in the FAC is dispositive at Rule 12.

The FAC pleads that Meta set the content policies; Accenture performed the final human review and made the routing determination at the chokepoint (including whether a flagged matter proceeded to NCMEC or into a non-report workflow); and Meta retained override authority and ratified outcomes. FAC ¶¶ 35, 37–41, 104–108, 126. These allegations must be credited as true on this motion. *Iqbal*, 556 U.S. at 678–79; *Manzarek*, 519 F.3d at 1031.

### B.    Identity visibility, immediate affirmation, and non-report plausibly show pretext.

The FAC pleads that, at the decision point, Accenture's reviewer could view Plaintiff's profile photo and government ID (race visibility), and the enforcement outcome was affirmed within hours; it further pleads no law-enforcement referral followed. FAC ¶¶ 39–41, 50–51, 97–101. Those facts, taken together, plausibly support an inference of pretext and defeat any request to resolve § 230(c)(2) "good faith" on the pleadings. *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–55 (9th Cir. 2019).

### C.    Comparator allegations further support plausibility at 12(b)(6).

The FAC pleads that white comparators flagged under the same policy were restored while Plaintiff remained permanently banned. FAC ¶¶ 63–67. At Rule 12, the Court draws the reasonable inference from these pleaded facts, in combination with the pipeline and visibility allegations, that race was the but-for cause of the adverse enforcement outcome—more than sufficient at the pleading

1  stage. *Iqbal*, 556 U.S. at 678–79; *Starr*, 652 F.3d at 1216–17; see *Comcast Corp. v. Nat'l Ass'n of*

2  *Afr. Am.-Owned Media*, 589 U.S. 327, 337 (2020).

3      Because these well-pleaded allegations must be accepted as true and plausibly state a claim

4  under the governing standards, dismissal is foreclosed. *Twombly*, 550 U.S. at 570; *Manzarek*, 519

5  F.3d at 1031.

6  **III.  Legal Standard & Record Scope**

7      **A.  Rule 12(b)(6) standard**

8      On a motion to dismiss, the Court accepts well-pleaded factual allegations as true, draws all

9  reasonable inferences in the non-movant's favor, and evaluates plausibility—not the truth of

10  competing factual narratives. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th

11  Cir. 2008); *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) (plausibility assessed by drawing

12  reasonable inferences for the plaintiff); *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010–11 (9th

13  Cir. 2011) (same standard applies to pro se pleadings). This Opposition applies that settled standard.

14      **B.  Record scope at Rule 12: no extra-record facts; limited exceptions.**

15      The Court's review is ordinarily confined to the complaint, documents incorporated by

16  reference, and matters properly subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903,

17  907–08 (9th Cir. 2003). Judicial notice does not permit acceptance of disputed factual assertions for

18  their truth. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). The Ninth Circuit has

19  repeatedly cautioned against "judicial notice" or "incorporation-by-reference" being used to smuggle

20  in new, disputed facts at the pleadings stage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

21  998–1003 (9th Cir. 2018). The incorporation-by-reference doctrine is narrow and applies only where

22  the complaint "necessarily relies" on the document and the parties do not genuinely dispute its

23  authenticity or relevance. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881–82 (9th Cir. 2021); *Coto*

24  *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

25      **C.  Declarations and hypotheticals are out of bounds at Rule 12.**

26      New factual material advanced in briefing or counsel declarations cannot be used to

27  contradict the complaint or to manufacture a factual record at Rule 12. *Schneider v. Cal. Dep't of*

28  *Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations in briefs are not considered); *Lee*, 250

F.3d at 688–90 (court may not take notice of the truth of disputed facts asserted in documents outside the pleadings); *Khoja*, 899 F.3d at 1002–03 (rejecting reliance on extra-record materials that create "a mini-trial on the pleadings"). Accordingly, any counsel declaration attached to Accenture's motion that offers alternative facts, characterizations, or hypotheticals should be disregarded at this stage.

### D.    No Rule 12(d) conversion is warranted.

If the Court declines to consider extra-record materials—as it should—no conversion occurs. See Fed. R. Civ. P. 12(d); *Ritchie*, 342 F.3d at 907–08. If the Court were to consider matters outside the pleadings, Rule 12(d) would require conversion to summary judgment with notice and a fair opportunity to present pertinent material—procedurally inappropriate given the live factual disputes Accenture's submission invites. *Lee*, 250 F.3d at 688; *Khoja*, 899 F.3d at 998–1003.

## IV.    Accenture's "Advertisements" / "Other Standards" Theories Are Extra-Pleading and Cannot Defeat the FAC at Rule 12

At Rule 12, review is confined to the complaint, documents incorporated by reference, and properly noticeable matters; courts may not use extra-record submissions to contradict well-pled allegations. *United States v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001). The Ninth Circuit cautions against "smuggling" new facts through judicial notice or incorporation by reference to manufacture a mini-trial at the pleadings stage. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998–1003 (9th Cir. 2018). Allegations in attorney briefing or declarations do not amend the pleadings. *Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

### A.    The "ads" content and "other standards" hypothesis are outside the pleadings

Accenture faults the FAC for not "detail[ing] the content of [Plaintiff's] advertisements" and advances an "obvious alternative" rationale—unspecified "other" community standards—to justify the enforcement outcome. Those content-based and alternative-policy theories are extra-pleading merits hypotheses. The FAC's theory is specific and differs: (1) no reportable CSE; (2) final human review and routing at the chokepoint after race was visible; (3) no CyberTip/NCMEC report; and (4)

1  white comparators restored while Plaintiff remained excluded. The Court evaluates that pled

2  sequence at Rule 12. See also Accenture's second MTD (raising "other standards") at pp. 9–11.

**B.    Accenture's post-hoc pivot confirms a live factual dispute, not a Rule 12 dismissal.**

For purposes of this motion, Accenture acknowledges the complaint adequately alleges no CSE violation, then pivots to an undefined "other standards" explanation. That is a factual disagreement with the FAC's narrative and cannot be resolved on a motion to dismiss. *Khoja*, 899 F.3d at 1003–04. The point is underscored by Accenture's own litigation-position email identifying page 11 of its motion ("Ballentine alleges there was no CSE violation…") while positing an alternative, non-CSE rationale.

**C.    Record-scope consequence: disregard extra-record matter; no Rule 12(d) conversion.**

Any counsel declaration or hypothesized facts about "evidence," ad content, or "other standards" are beyond the Rule 12 record and should be disregarded. *Ritchie*, 342 F.3d at 907–08; *Lee*, 250 F.3d at 688–90; *Schneider*, 151 F.3d at 1197 n.1. To the extent the Court were to consider them, Rule 12(d) would require conversion to summary judgment with notice and an opportunity to present *evidence*—procedurally inappropriate given the live disputes Accenture's theories inject. Lee, 250 F.3d at 688.

**D.    The FAC's pled sequence controls at this stage.**

The operative allegations—final human review + routing at the chokepoint after identity visibility, no CyberTip/NCMEC report, and comparator restorations—are credited as true on this motion. FAC ¶¶ 7–13, 35, 37–41, 50–51, 63–67, 76–77, 97–101, 104, 126. See also the Opposition's legal-standard and pipeline sections applying the same Rule 12 framework.

**V.    ARGUMENT**

**A.    Statute of Limitations (SOL)**

**1.    § 1981 is timely under the federal four-year period.**

Claims "made possible" by the 1991 amendments to § 1981—including post-formation interference with the "performance, modification, and termination of contracts, and the enjoyment of

all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b)—are governed by 28 U.S.C. § 1658's four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–84 (2004). The FAC pleads post-formation interference with ongoing advertising/business relationships and the benefits of those contracts. See FAC ¶¶ 48–56, 118–121, 128–132. Those allegations place the § 1981 claim within the four-year period, rendering Accenture's across-the-board two-year argument inapposite as to § 1981.

### 2. Other federal claims (†§§ 1982/1983/1985(3)) are not dismissible on the face of the pleadings.

Although statute of limitations is an affirmative defense and need not be pled around, §§ 1982, 1983, and 1985(3) generally borrow the forum state's personal-injury statute (two years in California, Cal. Civ. Proc. Code § 335.1), see *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *Wilson v. Garcia*, 471 U.S. 261, 276–80 (1985), dismissal on limitations grounds at Rule 12 is proper only when the running of the statute is apparent on the face of the complaint and no tolling or accrual theory could apply. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275–77 (9th Cir. 1993); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995). The FAC pleads present-tense, ongoing third party contract interference and related business/property access into 2024–2025, which—at minimum—precludes a with-prejudice SOL dismissal at this stage. See FAC ¶¶ 85–92 (ongoing refusal and continued injuries). Accenture's motion asserts an across-the-board two-year bar, but timeliness is typically a fact question and not suitable for resolution on a motion to dismiss where the complaint permits tolling or continuing-accrual inferences. *Cervantes*, 5 F.3d at 1276–77. See also Accenture Second MTD (raising blanket two-year limitations).

### 3. The UCL claim is timely under California's four-year statute.

California's UCL carries a four-year limitations period. Cal. Bus. & Prof. Code § 17208. The FAC's UCL allegations span 2022–2025 and seek prospective, practice-level relief, comfortably within the statutory window. See FAC ¶¶ 162–168, 169–187.

### Disposition.

Because § 1981 is governed by a four-year statute and the FAC does not foreclose tolling/continuing-accrual inferences for the other federal claims—and the UCL is subject to a

---

11

1   four-year statute—Accenture's statute-of-limitations challenge must be rejected at Rule 12.

2   *Cervantes*, 5 F.3d at 1276–77; *Jones*, 541 U.S. at 382–84.

3       **B.    Causation**

4       Accenture argues that Plaintiff fails to allege causation because only Meta had final authority

5   to terminate the account, and Accenture "merely recommended" outcomes. This argument misstates

6   both the law and the factual sequence pled in the FAC.

7       **1.    Plausible But-For Causation is Pled**

8       The FAC alleges that Accenture conducted the final human review of Plaintiff's case after

9   Plaintiff's race was visible and executed the operational routing decision that determined whether

10  Plaintiff's matter proceeded to law enforcement reporting or was routed to a non-report workflow.

11  These allegations must be accepted as true on a Rule 12(b)(6) motion. Under established law, a

12  plaintiff must plausibly allege that the defendant's conduct was a but-for cause of the claimed injury;

13  proof is not required at the pleadings stage. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,

14  589 U.S. 327, 331–33 (2020); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013).

15  Here, Plaintiff alleges that Accenture's final review and routing decision—made after Plaintiff's race

16  was visible—was a but-for and proximate cause of the permanent exclusion that followed. These

17  facts, accepted as true, support the required inference that but for Accenture's conduct, the injury

18  would not have occurred.

19      **2.    Multiple But-For Causes Are Actionable**

20      Accenture's insistence that it lacked "final authority" does not defeat causation. The Supreme

21  Court has repeatedly recognized that more than one cause can satisfy the but-for standard; a

22  defendant is not insulated simply because another actor also contributed to the outcome. *Bostock v.*

23  *Clayton County*, 590 U.S. 644, 140 S. Ct. 1731, 1739 (2020). That Meta ultimately ratified the

24  decision does not sever Accenture's role if Plaintiff plausibly alleges Accenture's review and routing

25  were factors without which the adverse action would not have occurred. That is precisely what the

26  FAC alleges.

27      **3.    Proximate Causation Includes Recommenders at the Chokepoint**

28

PLAINTIFF'S OPPOSITION TO ACCENTURE LLP MOTION TO DISMISS FIRST AMENDED COMPLAINT

A recommender or reviewer at an operational chokepoint can be a proximate cause of an adverse outcome, even where another actor retains technical approval authority. The Supreme Court has confirmed that biased or outcome-determinative input into a decision can support liability for downstream injury. See *Staub v. Proctor Hosp.*, 562 U.S. 411, 419–22 (2011) (biased recommendation by a supervisor that is a proximate cause of termination suffices for liability). The Ninth Circuit follows the same principle. *Poland v. Chertoff*, 494 F.3d 1174, 1181–82 (9th Cir. 2007). The FAC specifically pleads that Accenture's final human review, race visibility, and routing determination dictated what happened next. That suffices to plead proximate cause at this stage.

### 4.    Accenture's Framing is a Merits Dispute, Not a Pleading Defect

Accenture's motion concedes that Meta set policy, trained reviewers, and retained override authority, but that does not foreclose causation. At this stage, Plaintiff's well-pled factual sequence—final review and routing after race visibility, followed by same-day affirmation and non-report—is credited over competing defense narratives. Competing factual explanations or extrinsic hypotheses are not grounds for dismissal. *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### 5.    Plaintiff's Allegations are Sufficient Under Rule 12(b)(6)

At the pleadings stage, the Court draws reasonable inferences for Plaintiff. Plaintiff has pled a plausible causal chain: identity-visible final review and routing by Accenture; same-day affirmation by Meta; permanent exclusion without a CyberTipline report. This sequence, if proven, is actionable causation. Dismissal is unwarranted.

### C.    Intent and Comparator Allegations (Plausibility under Twombly/Iqbal)

Accenture's attack on intent ignores what the FAC actually pleads and the Rule 12 standard. At this stage, the Court accepts well-pleaded facts and draws reasonable inferences for the plaintiff; a discrimination claim need not prove its case or negate every benign hypothesis to proceed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Opposition already catalogs the specific facts pled: race-identifying imagery was visible at the enforcement decision; the outcome was affirmed the same day; and the matter was routed

without a CyberTip/NCMEC report, while white users in the same enforcement family were restored. Those pleaded facts are the frame for the plausibility analysis.

**1.    Identity-visible decision point supports a reasonable inference of discriminatory purpose.**

The FAC alleges the reviewer could see Plaintiff's profile photo and government ID at the moment of decision; the enforcement was affirmed within hours; and no NCMEC report followed. That sequence permits an inference of discriminatory intent from circumstantial evidence at the pleadings stage. The Supreme Court recognizes that intent may be inferred from "the totality of the relevant facts," including the sequence of events and departures from expected procedures. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). And circumstantial evidence alone may suffice; direct proof is not required. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–101 (2003). The FAC's chronology—identity visibility, same-day affirmation, and a non-report workflow—comfortably meets plausibility.

**2.    Comparator allegations corroborate intent and are classic evidence of discrimination.**

The FAC pleads that white users flagged under the same CSE enforcement family were restored while Plaintiff remained permanently excluded, and that the vendor-staffed queues were the same queues Accenture staffed. Comparator treatment is a recognized way to show discriminatory purpose. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Those allegations, taken as true, plausibly support an inference of intentional discrimination under §§ 1981/1982 and Equal Protection—no heightened pleading is required beyond a short and plain statement. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002). The operative Opposition already lays out these comparator facts for this motion.

**3.    Accenture's "other standards" hypothesis does not defeat plausibility at Rule 12.**

Accenture's suggestion that an unspecified "other" community-standards violation explains the outcome is a merits dispute and cannot be used to rewrite the FAC. On a motion to dismiss, courts do not weigh competing narratives or resolve which explanation ultimately wins; the question is whether Plaintiff's alleged sequence is plausible. *Starr v. Baca*, 652 F.3d 1202, 1216–17

14

(9th Cir. 2011). The Outline cabins this precise point—"other standards" is not a pleading defect, and in any event it is inconsistent with Accenture's own litigation-position premise that the complaint adequately alleges "no CSE" violation. See also Accenture's second motion raising the "other standards" pivot.

**D.    Section 230 does not apply because the claims target Accenture's own enforcement conduct, not publisher liability**

Section 230(c)(1) protects an interactive computer service from being treated "as the publisher or speaker" of content provided by another. It does not bar claims premised on the defendant's own conduct when that conduct is independent of publishing third-party content. See *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852–54 (9th Cir. 2016) (duty-to-warn claim not barred because it did not seek to treat defendant as a publisher); *Lemmon v. Snap, Inc.,* 995 F.3d 1085, 1092–93 (9th Cir. 2021) (no immunity where claim targeted the defendant's product/design conduct rather than editorial acts).

As pled, Plaintiff does not sue Accenture "as a publisher." The claims challenge Accenture's final human review**,** its race-visible decision-making**,** and its routing at the enforcement chokepoint—followed by a non-report after a CSE tag and disparate comparator restorations**.** Those alleged actions are Accenture's own enforcement conduct**,** not the publication of third-party content. The Ninth Circuit has also emphasized that § 230 is not a "lawless no-man's-land"; immunity does not extend when the defendant's conduct goes beyond passive editorial functions. *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1164 n.15 (9th Cir. 2008) (en banc).

Further, Accenture is a vendor/contractor**,** not the platform operator. Courts decline to extend § 230 to shield intermediaries whose own participation in the challenged practices gives rise to liability. See *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173–75 (2d Cir. 2016) (no § 230 immunity for a contractor that actively participated in deceptive practices). The claims here fit that pattern.

**E.    § 230(c)(2) "good faith" is an affirmative, fact-intensive issue not suitable for dismissal**

PLAINTIFF'S OPPOSITION TO ACCENTURE LLP MOTION TO DISMISS FIRST AMENDED COMPLAINT

Even if § 230(c)(2) were reached, immunity depends on the defendant's good faith belief that the material is "objectionable." Whether the blocking decision was made in good faith is fact-intensive and typically cannot be resolved on the pleadings when the complaint plausibly alleges an improper motive. See *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019) (reversing dismissal; allegations of pretext/animus defeated (c)(2) immunity at Rule 12).

Plaintiff alleges (i) Accenture accepts there was no CSE violation for purposes of this motion, (ii) Accenture affirmed the enforcement outcome after Plaintiff's race became visible at final review, (iii) no report followed the CSE tag, and (iv) similarly situated white users were restored. Taken as true, that sequence plausibly negates "good faith" and forecloses § 230(c)(2) dismissal at this stage.

Accenture's § 230 defense fails on the current record. The claims do not treat Accenture "as a publisher" under § 230(c)(1); instead, they challenge Accenture's own discriminatory enforcement conduct. And whether Accenture acted in "good faith" under § 230(c)(2) presents a factual question that cannot be resolved on a motion to dismiss. The Court should therefore deny dismissal under § 230.

## F.    § 1983 (State Action)

To state a § 1983 claim, the challenged conduct must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Ninth Circuit recognizes multiple, non-exclusive paths to attribution—including joint action and close nexus/entwinement—and assesses them under a fact-intensive inquiry. *Kirtley v. Rainey*, 326 F.3d 1088, 1092–95 (9th Cir. 2003); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298–302 (2001).

### 1.    Plausible joint-action allegations.

The FAC alleges Accenture performed the final human review and executed the routing determination that controlled whether Plaintiff's matter entered the 18 U.S.C. § 2258A → NCMEC pipeline or a non-report workflow, and that this chokepoint decision occurred after Plaintiff's race was visible, with Meta's ratification of the outcome. FAC ¶¶ 35, 40, 68–83, 104–108, 126, 146(a)–(c). These facts plausibly allege that Accenture "willful[ly] participat[ed] in joint activity"

1  culminating in state-facing processes, satisfying § 1983's color-of-law requirement at the pleading
2  stage. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Lugar*, 457 U.S. at 937.

3      **2.    Close nexus/entwinement is a fact question not suitable for Rule 12 dismissal.**

4      Whether Accenture's final-step routing and the linked statutory reporting regime reflect a
5  relationship "so far insinuated" that the conduct is fairly treated as state action is a fact-bound
6  inquiry that should not be resolved on the pleadings here. *Brentwood Acad.*, 531 U.S. at 298–302;
7  *Kirtley*, 326 F.3d at 1094–95. The allegations of identity-visible review at an operational chokepoint
8  that determines whether government processes are triggered are enough to proceed. FAC ¶¶ 35, 40,
9  68–83, 104–108, 126.

10      **3.    Distinguishing cases on mere compliance or advisory interactions.**

11      Accenture may cite decisions holding that mere compliance with § 2258A or government
12  advisory interactions do not alone create state action. See *United States v. Rosenow*, 50 F.4th 715,
13  730–33 (9th Cir. 2022) (mandatory reporting, by itself, does not transform a private actor into a
14  government agent); *O'Handley v. Weber*, 62 F.4th 1145, 1155–60 (9th Cir. 2023) (no state action
15  where platform exercised independent judgment despite government flagging). Those authorities do
16  not defeat the FAC at Rule 12, because Plaintiff does not rely on bare compliance or government
17  suggestion. He alleges Accenture itself exercised discretionary, outcome-determinative routing at the
18  final step—after race was visible—that dictated whether the state's reporting pipeline was triggered,
19  and Meta ratified the result. Whether that operational integration satisfies joint action or close nexus
20  is a case-specific question that cannot be resolved against Plaintiff on the pleadings. *Brentwood
21  Acad.*, 531 U.S. at 298–302; *Kirtley*, 326 F.3d at 1094–95. FAC ¶¶ 35, 40, 68–83, 104–108, 126,
22  146(a)–(c).

23      Because the FAC plausibly alleges joint action and a close nexus under controlling Supreme
24  Court and Ninth Circuit standards, Accenture's Rule 12 challenge to § 1983 should be denied. *Lugar*,
25  457 U.S. at 937; *Brentwood Acad.*, 531 U.S. at 298–302; *Kirtley*, 326 F.3d at 1092–95.

26  **G.    § 1985(3) (Conspiracy)**

27      To state a § 1985(3) claim, a plaintiff must plausibly allege (1) a conspiracy; (2) to deprive
28  the plaintiff of equal protection or equal privileges; (3) an overt act in furtherance of the conspiracy;

and (4) resulting injury—together with the required class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 101–03 (1971); *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). These are Rule 8 allegations judged under *Twombly/Iqbal* plausibility; direct proof of the agreement is not required and may be inferred from circumstantial facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999).

*Applied here, the FAC pleads concrete "plus factors" that plausibly permit an inference of agreement:* Accenture conducted the identity-visible final human review at the enforcement chokepoint and executed the routing decision (NCMEC vs. non-report) within a jointly operated workflow subject to Meta's ratification. During the very quarter of Plaintiff's enforcement—when human reviewers were reversing CSE designations at the highest level alleged—Defendants increased discretionary restorations generally yet did not restore Plaintiff under the same Meta guidance that governed both designations and restorations. The synchronized roles, shared guidance, and the divergence from the contemporaneous restoration trend supply more than parallel conduct; they are circumstantial evidence of concerted action and discriminatory purpose sufficient under Twombly at Rule 12. These allegations also plead the overt acts (final review and routing) and injury (continuing exclusion and business loss), satisfying § 1985(3).

**1. Meeting of the minds is plausibly alleged through the shared enforcement workflow.**

The FAC alleges a coordinated, sequential workflow in which Accenture performed the final human review and routing determination after Plaintiff's race was visible (profile photo and passport), and Meta then ratified the outcome—while white users in the same enforcement family were restored. FAC ¶¶ 26–28, 99, 104–108, 155–161. Those coordinated steps, within the same enforcement pipeline, permit an inference of a "meeting of the minds" at the pleading stage. *Mendocino*, 192 F.3d at 1301 (agreement may be inferred from circumstantial evidence); *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (concerted action can establish agreement).

**2. Animus is adequately pled.**

PLAINTIFF'S OPPOSITION TO ACCENTURE LLP MOTION TO DISMISS FIRST AMENDED COMPLAINT

Section 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102. The FAC alleges race-aware review at the decision point and disparate outcomes in the same enforcement family; those facts, taken as true, plausibly plead the required racial animus. See *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 836–39 (1983) (private § 1985(3) conspiracy must rest on class-based animus and target rights cognizable against private interference).

### 3.    Overt act and injury are alleged.

Accenture's final-step review and routing (and Meta's ratification) are overt acts in furtherance of the conspiracy; the permanent exclusion from the platform and loss of business are concrete injuries. FAC ¶¶ 104–108, 155–161. See *Scott v. Ross*, 140 F.3d at 1284 (overt-act and injury elements).

### 4.    Rule 12 does not permit re-characterizing the pled coordination as "ordinary business."

At this stage, the Court credits the FAC's specific sequence and reasonable inferences rather than defense characterizations. *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678–79. The alleged shared workflow—Accenture's identity-visible, outcome-determinative review at the chokepoint and Meta's ratification—plausibly alleges concerted action under § 1985(3).

Because the FAC plausibly alleges a race-based agreement, overt acts, and injury within a shared enforcement pipeline, the § 1985(3) claim should proceed. *Griffin*, 403 U.S. at 101–03; *Scott v. Ross*, 140 F.3d at 1284.

### H.    UCL (Unlawful / Unfair / Fraudulent)

### 1.    Unlawful.

The UCL's "unlawful" prong "borrows" violations of other laws and makes them independently actionable. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). Because Plaintiff plausibly pleads federal civil-rights violations (§§ 1981, 1982, 1983, 1985(3)), the derivative "unlawful" prong survives at Rule 12. See FAC ¶¶ 151, 166–171.

### 2.    Unfair.

1    A practice is "unfair" when it offends established public policy or causes substantial injury
2  that is not outweighed by countervailing benefits. The Ninth Circuit recognizes these formulations in
3  applying the UCL. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). The
4  FAC alleges identity exposure at the review decision point, discretionary routing at the enforcement
5  chokepoint, a non-report workflow despite a CSE label, and an ongoing exclusionary effect. FAC
6  ¶¶ 151, 166–171. Taken as true, those allegations plausibly tether the challenged conduct to
7  legislatively expressed anti-discrimination policies and describe substantial, continuing injury not
8  justified by any benefit at the pleadings stage. *Lozano*, 504 F.3d at 735.

9        **3.    Fraudulent (if reached).**

10    Under the UCL, a practice is "fraudulent" if it is likely to deceive a reasonable consumer;
11  reliance and economic injury are required for standing. *Davis*, 691 F.3d at 1169; *Hinojos v. Kohl's*
12  *Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). The FAC pleads practice-level deception: use of a CSE
13  label at the decision point while routing to a non-report workflow and later shifting to an "other
14  standards" rationale, creating a misleading mismatch between the stated justification and the
15  operative process. FAC ¶¶ 152, 157, 169–173. To the extent the Court requires Rule 9(b) particulars
16  as to reliance vis-à-vis Accenture, Plaintiff requests leave to amend while preserving the
17  independently sufficient unlawful and unfair prongs. *Kearns v. Ford Motor Co.*, 567 F.3d 1120,
18  1125–27 (9th Cir. 2009); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir.
19  2003).

20        **4.    Remedies (Sonner).**

21    Equitable relief is available only where legal remedies are inadequate. *Sonner v. Premier*
22  *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff seeks public injunctive relief—including
23  identity masking at review, audit logging of human-review/routing actions, and transparency
24  dashboards—forward-looking structural remedies not available at law and aimed at ongoing
25  practices. FAC ¶¶ 169–187. That requested relief addresses prospective harms and cannot be
26  provided by damages. See *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824–25 (9th Cir. 2019). In the
27  alternative, if the Court requires further "inadequacy" particulars, Plaintiff requests leave to amend
28  consistent with *Sonner*.

The UCL claim proceeds under the "unlawful" and "unfair" prongs; the "fraudulent" prong is adequately pleaded and, at minimum, should be afforded leave to amend as to reliance particulars, without prejudice to the other prongs. *Davis*, 691 F.3d at 1168–69; *Lozano*, 504 F.3d at 735; *Sonner*, 971 F.3d at 844.

**VI.  PROCEDURAL NOTES / HEARING FRAME**

The Court can cabin this motion to Accenture's litigation position that, for present purposes, the FAC adequately alleges "no CSE"—used only to narrow issues, not to inject extrinsic facts or trigger Rule 12(d). Courts may treat counsel's concessions as binding for a motion and must disregard extra-pleading matter that would require conversion. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1004 (9th Cir. 2018).

Asymmetry on reportability facts reinforces denial at Rule 12: the FAC pleads non-report; Defendants declined to confirm at preservation meet. Where the pleadings permit tolling or estoppel inferences, dismissal on accrual/notice disputes is improper. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276–77 (9th Cir. 1993); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995).

**VII.  REMEDY & RELIEF**

Deny the motion in full. The FAC's well-pled sequence—identity-visible final review; chokepoint routing; non-report; comparators—states plausible claims under controlling standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Alternatively, grant targeted leave to amend (UCL *Sonner* "inadequacy" particulars; any reliance-as-to-Accenture particulars the Court prefers; tolling particulars), consistent with the strong federal policy favoring amendment—especially for a pro se litigant. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc).

**VIII.  CONCLUSION**

Accenture moves to dismiss a civil rights case about the weaponization of child protection laws against Black business owners, yet cannot identify—after three years—what content allegedly violated any policy. The stakes could not be higher: if federal contractors can invoke society's gravest accusation to destroy minority-owned businesses while restoring confirmed violators of other races, then civil rights laws mean nothing in the digital age. Accenture's motion attacks a different complaint and leans on extra-pleading speculation, asking this Court to imagine benign explanations that contradict its own October 24, 2025 confession that there was no CSE violation.

Under Rule 12, the Court accepts the FAC's well-pled sequence and draws reasonable inferences for Plaintiff. *Iqbal*, 556 U.S. at 678–79; *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011). When a federal contractor exercises final review authority with race visible through government identification, affirms baseless accusations, and routes cases away from law enforcement while Meta restores white comparators, that conduct states a claim under federal civil rights law. Section 230 does not shelter a vendor's own discriminatory enforcement conduct, and "goodfaith" under § 230(c)(2) presents a fact question on these allegations. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852–54 (9th Cir. 2016); *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092–93 (9th Cir. 2021); *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1164 n.15 (9th Cir. 2008) (en banc); *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–55 (9th Cir. 2019).

On the pleadings—identity-visible final review, chokepoint routing, no report, and disparate comparators—the motion should be denied, or, at minimum, denied with targeted leave to amend as outlined above. Plaintiff has stated claims that deserve their day in court.

Dated: November 3, 2025                                    Respectfully submitted,


                                                           */s/ Marvelle J. Ballentine*
                                                           Marvelle J. "Jay" Ballentine
                                                           Plaintiff, pro se

PLAINTIFF'S OPPOSITION TO ACCENTURE LLP MOTION TO DISMISS FIRST AMENDED COMPLAINT