1
2
3

Marvelle J. "Jay" Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, pro se

4

5
6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

12

13

14

MARVELLE J. "JAY" BALLENTINE

     Plaintiff,

   vs.

META PLATFORMS, INC., and
ACCENTURE LLP

     Defendant(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:25-cv-07671-CRB

**PLAINTIFF'S OPPOSITION TO META
PLATFORM INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Date:  January 30, 2026
Time:  10:00 a.m.
Judge:  Hon. Charles R. Breyer
Dept:  Courtroom 6—17th Fl
     San Francisco

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court deny Meta Platform Inc.'s Motion to Dismiss the First Amended Complaint in its entirety.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should deny Meta Platforms Inc.'s Rule 12(b)(6) motion because the First Amended Complaint plausibly alleges that:

1.     § 230 bars claims where the FAC challenges Meta's own enforcement conduct and design choices rather than treatment of third-party content;

2.     Plaintiff's §§ 1981/1982 claims are timely under 28 U.S.C. § 1658's four-year period and the FAC's pleaded continuing-violation/equitable-tolling facts;

3.     the FAC plausibly alleges causation and discriminatory intent (identity-visible final review, non-report routing after a CSE label, comparator restorations) under *Twombly/Iqbal*;

4.     in the alternative, state action is plausibly alleged under § 1983 (joint-action/close-nexus theories tied to the § 2258A→NCMEC pipeline);

5.     the § 1985(3) conspiracy claim is adequately pled through coordinated workflow, overt acts, and injury; and

6.     the UCL claims (unlawful/unfair/fraudulent) proceed and equitable relief is available consistent with *Sonner*.

PLAINTIFF'S OPPOSITION TO META PLATFORM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224 (9th Cir. 1988) ................................. 24

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................................... 2, 25

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ............................................................ 2, 25

Blair v. Rent-A-Center, Inc., 928 F.3d 819 (9th Cir. 2019) ............................................... 24

Bostock v. Clayton County, 140 S. Ct. 1731 (2020) ....................................................... 16

Burrage v. United States, 571 U.S. 204 (2014) ............................................................ 16

Cervantes v. City of San Diego, 5 F.3d 1273 (9th Cir. 1993) .............................................. 14–15

Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009 (2020)..... 16

Dennis v. Sparks, 449 U.S. 24 (1980) ..................................................................... 21

Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) .......................................................... 18

Doe v. Internet Brands, Inc., 824 F.3d 846 (9th Cir. 2016) ............................................... 20

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) ................................. 25

Enigma Software Grp. USA, LLC v. Malwarebytes, Inc., 946 F.3d 1040 (9th Cir. 2019) ........ 20

Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157 (9th Cir. 2008) (en banc) .... 19–20

Foman v. Davis, 371 U.S. 178 (1962) ..................................................................... 25

Gilbrook v. City of Westminster, 177 F.3d 839 (9th Cir. 1999) ............................................ 23

Griffin v. Breckenridge, 403 U.S. 88 (1971) .............................................................. 23

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) ................................................ 13

Kirtley v. Rainey, 326 F.3d 1088 (9th Cir. 2003) ......................................................... 21

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018) ..................................... 9

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) .................................................. 9–10

Lemmon v. Snap, Inc., 995 F.3d 1085 (9th Cir. 2021) ..................................................... 20

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc) ................................................. 25

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) ....................................................... 21

Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025 (9th Cir. 2008) ........................... 9

Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283 (9th Cir. 1999) ............................ 23

O'Handley v. Weber, 62 F.4th 1145 (9th Cir. 2023) ....................................................... 21–22

Owens v. Okure, 488 U.S. 235 (1989) ................................................................ 15

Poland v. Chertoff, 494 F.3d 1174 (9th Cir. 2007) ........................................... 16

United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003) ....................................... 9

United States v. Rosenow, 50 F.4th 715 (9th Cir. 2022) ................................... 22

Scott v. Ross, 140 F.3d 1275 (9th Cir. 1998) ................................................... 23

Sonner v. Premier Nutrition Corp., 971 F.3d 834 (9th Cir. 2020) .................... 24

Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011) .................................................... 25

Wilson v. Garcia, 471 U.S. 261 (1985) ............................................................. 15

Statutes

18 U.S.C. § 2258A .................................................................................... 21, 24

28 U.S.C. § 1658 ............................................................................................. 13

28 U.S.C. § 2201 ............................................................................................. 24

42 U.S.C. § 1981 ............................................................................................. 13

42 U.S.C. § 1982 ............................................................................................. 24

42 U.S.C. § 1983 ............................................................................................. 21

42 U.S.C. § 1985(3) ........................................................................................ 23

47 U.S.C. § 230 ............................................................................................... 19

Cal. Bus. & Prof. Code § 17200 ..................................................................... 24

Cal. Bus. & Prof. Code § 17208 ..................................................................... 15

Cal. Civ. Proc. Code § 335.1 .......................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224 (9th Cir. 1988) ................................. 24

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ............................................................................ 2, 25

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ............................................................ 2, 25

Blair v. Rent-A-Center, Inc., 928 F.3d 819 (9th Cir. 2019) ................................................ 24

Bostock v. Clayton County, 140 S. Ct. 1731 (2020) ................................................... 16

Burrage v. United States, 571 U.S. 204 (2014) ....................................................... 16

Cervantes v. City of San Diego, 5 F.3d 1273 (9th Cir. 1993) ............................... 14–15

Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009 (2020)..... 16

Dennis v. Sparks, 449 U.S. 24 (1980) ....................................................................... 21

Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) ..................................................... 18

Doe v. Internet Brands, Inc., 824 F.3d 846 (9th Cir. 2016) ...................................... 20

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) ................................. 25

Enigma Software Grp. USA, LLC v. Malwarebytes, Inc., 946 F.3d 1040 (9th Cir. 2019) ........ 20

Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157 (9th Cir. 2008) (en banc) .... 19–20

Foman v. Davis, 371 U.S. 178 (1962) ................................................................... 25

Gilbrook v. City of Westminster, 177 F.3d 839 (9th Cir. 1999) ................................. 23

Griffin v. Breckenridge, 403 U.S. 88 (1971) ........................................................... 23

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) ..................................... 13

Kirtley v. Rainey, 326 F.3d 1088 (9th Cir. 2003) ................................................... 21

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018) .......................... 9

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) .................................... 9–10

Lemmon v. Snap, Inc., 995 F.3d 1085 (9th Cir. 2021) ......................................... 20

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc) ...................................... 25

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) ............................................... 21

Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025 (9th Cir. 2008) ........................... 9

Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283 (9th Cir. 1999) ........................... 23

O'Handley v. Weber, 62 F.4th 1145 (9th Cir. 2023) ........................................... 21–22

Owens v. Okure, 488 U.S. 235 (1989) ............................................................ 15

Poland v. Chertoff, 494 F.3d 1174 (9th Cir. 2007) ...................................... 16

United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003) ................................ 9

United States v. Rosenow, 50 F.4th 715 (9th Cir. 2022) ............................. 22

Scott v. Ross, 140 F.3d 1275 (9th Cir. 1998) ............................................... 23

Sonner v. Premier Nutrition Corp., 971 F.3d 834 (9th Cir. 2020) .............. 24

Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011) .............................................. 25

Wilson v. Garcia, 471 U.S. 261 (1985) ........................................................ 15

Statutes

18 U.S.C. § 2258A ................................................................................. 21, 24

28 U.S.C. § 1658 ........................................................................................... 13

28 U.S.C. § 2201 ........................................................................................... 24

42 U.S.C. § 1981 ........................................................................................... 13

42 U.S.C. § 1982 ........................................................................................... 24

42 U.S.C. § 1983 ........................................................................................... 21

42 U.S.C. § 1985(3) ...................................................................................... 23

47 U.S.C. § 230 ............................................................................................. 19

Cal. Bus. & Prof. Code § 17200 ................................................................... 24

Cal. Bus. & Prof. Code § 17208 ................................................................... 15

Cal. Civ. Proc. Code § 335.1 ....................................................................... 15

**INTRODUCTION**

Like its partner, Accenture, Meta moves to dismiss a complaint it refuses to acknowledge—because confronting it would require answering for what happened on July 4, 2022: Independence Day. That tactic echoes 1873, when the Supreme Court, in the Slaughterhouse Cases, gutted the Fourteenth Amendment by disclaiming responsibility for private acts of discrimination. Then, the Court evaded constitutional accountability through jurisdictional narrowing. Today, Meta invokes Section 230 to do the same—claiming immunity not for moderating third-party content, but for executing enforcement decisions after viewing government ID, applying the most incendiary label in digital commerce, and bypassing law enforcement altogether. The mechanism has changed; the result is the same: a Black citizen stripped of economic liberty by private hands, left without remedy.

Meta needs this court to look away because Meta does not want to address the simple truth as it relates to its 80 million CSE enforcement actions in 2022; *Meta either did not report apparent violations to NCMEC as required by law or, Meta applied the CSE enforcement category to instances where there were no apparent violations of child exploitation laws.*

Meta offers explanations, and in doing so, implicitly invites this Court to put those to the test.

Meta baselessly invoked its CSE policy upon Plaintiff and today Meta invokes Section 230 as an escape hatch. Not to contest the facts, but to avoid them. Meta argues that because enforcement decisions involve content, and content involves publication, Section 230 forecloses all scrutiny—even where race was visible, law enforcement was bypassed, and white comparators were restored.

But the First Amended Complaint does not seek to hold Meta liable for third-party content. It challenges Meta's own enforcement conduct: terminating a Black business owner under its gravest policy, after viewing government ID, affirming the false designation, and denying all recourse. That is not publishing. That is discriminatory execution of platform authority.

The litigation record reflects the same disturbing pattern. Plaintiff requested separate conference sessions to avoid being overwhelmed by two firms. Meta refused. Meta chose confrontation over accommodation. Then, when Plaintiff filed an innocuous administrative scheduling motion requesting parity, Meta responded with a cross-motion asking the Court to ban him from filing motions.

That motion was denied. This motion should be denied too.

**The Well-Pled Allegations Foreclose Dismissal**

Meta's motion fails because it argues against a complaint that does not exist. The First Amended Complaint ("FAC") alleges a specific, chronological sequence that controls at Rule 12:

1.    *Baseless CSE invocation followed by Meta's ratification.* Meta invoked its Child Sexual Exploitation ("CSE") policy and—after final human review—ratified a permanent disablement of Plaintiff's account. FAC ¶¶49–52, 84. Meta recasts this as a generic "account termination" dispute insulated by § 230, stating the claims "arise out of Meta's alleged termination of Plaintiff's Facebook account."

2.    *Race visibility at the decision point.* At the time of the enforcement decision, the reviewer had access to identity-revealing materials—Plaintiff's profile photo and government ID—and the disablement was affirmed within hours. FAC ¶¶39–41, 50–51, 107–108.

3.    *Comparator corroboration in the same enforcement family.* White users processed through the same CSE enforcement family and vendor-staffed queues were restored while Plaintiff remained excluded. FAC ¶¶62–67, 99, 104. Meta's own brief invokes system-wide enforcement and reversal counts to set scale (e.g., 105.9 million CSE actions; 8,100 reversals), underscoring that disparities are factual matters for discovery, not dismissal.

4.    *No CyberTip/NCMEC report despite the CSE label.* The matter was routed through a workflow that did not result in a report to the National Center for Missing and Exploited Children—central to the FAC's pretext theory. FAC ¶¶51, 97–101. Meta's declaration/policy exhibit confirms removals extend beyond statutory reporting, reinforcing that this was a discretionary, design-level decision, not a law-driven inevitability.

5.    *Practice-level relief, not editorial control.* The requested relief targets enforcement architecture—identity-masking at final review, audit logging, a narrow existence/date CyberTip confirmation, and orderly return of account-resident business property—duties independent of publishing third-party content. FAC ¶¶182–187.

Taken as true, these allegations state claims for race discrimination and related relief against Meta at the pleadings stage.

**Section 230 Cannot Immunize Meta's Own Enforcement Conduct**

PLAINTIFF'S OPPOSITION TO META PLATFORM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Section 230(c)(1).* These counts do not treat Meta "as the publisher" of Plaintiff's content. They challenge Meta's own enforcement conduct and pipeline design—race-visible final review at the decisional chokepoint, discretionary routing that yielded no NCMEC report after applying a CSE label, ongoing exclusion, and withholding of account-resident business data. Those duties arise from anti-discrimination and contracting law, not from publishing or failing to publish third-party content. Meta's motion forces a publisher frame by re-characterizing the case as mere "termination," but the FAC targets practice-level conduct.

*Section 230(c)(2).* Even if reached, "good-faith" is a fact question not resolvable on the pleadings where the complaint plausibly alleges pretext and discriminatory enforcement after race was visible, coupled with restoration of similarly situated white users. Co-defendant Accenture's litigation-position clarification (Email 17)—that Accenture's motion does **not** suggest Plaintiff violated child-protection laws—further supports the FAC's pretext theory and forecloses any early "good-faith" determination.

### The Pattern Establishes Plausibility

*July 4, 2022 (before any ID request):* Plaintiff's profile photo, showing his Black face, was visible to the enforcement reviewer. FAC ¶107.

*Same day:* Meta requested government ID; Plaintiff submitted his U.S. passport. FAC ¶108.

*Same day:* A human reviewer affirmed the CSE enforcement within hours, after identity was visible; Meta ratified the outcome. FAC ¶¶50–51, 84, 108.

*No NCMEC report:* The workflow did not result in a CyberTipline report. FAC ¶51.

*Disparity:* White comparators processed through the same enforcement family were restored; Plaintiff remained permanently banned. FAC ¶¶62–67.

This straightforward chronology crosses the plausibility line under Rule 8, particularly when read with Meta's own scale metrics and the FAC's architecture-focused remedies.

### Meta Cannot Rewrite the Complaint

Meta's motion relies on extra-pleading narratives to force a § 230 publisher frame:

1.    *"Advertisements" hypothesis.* Meta rewrites FAC ¶48 into "first posted advertisements … June 27–30, 2022" and faults the FAC for not detailing ad content. The FAC pleads a different

theory: baseless CSE tagging affirmed after race was visible; a non-report workflow; and comparator restorations—none of which requires pleading ad content. FAC ¶¶48–52, 62–67, 97–101, 104.

2.    *"Other standards" post-hoc pivot.* Meta posits undefined alternative policies as "obvious" explanations. That is a merits hypothesis contradicting the FAC's non-report allegation and cannot be resolved against Plaintiff at Rule 12.

3.    *Improper reliance on declaration/policy exhibits.* Meta's Duffey declaration and CSE policy excerpt are offered for the truth of disputed matters (benign rationale, "good faith") and cannot displace well-pled allegations at Rule 12 without converting the motion—precisely the record-scope constraint already briefed in Plaintiff's Accenture opposition.

4.    *Publisher/termination reframing.* The motion's repeated assertion that "all of Plaintiff's claims arise out of … termination" seeks to re-label practice-level discrimination and chokepoint routing as editorial choice. At Rule 12, the FAC governs.

These record-scope defects and extra-pleading pivots reinforce that Meta's motion should be denied at the threshold, consistent with the same structure and grounds already advanced against Accenture.

**Question Before This Court**

Does the Fourteenth Amendment's promise of equal protection reach digital marketplaces where racial characteristics visible at enforcement produce categorically different outcomes, or has Section 230 created a constitutional exception allowing platforms to operate the very discrimination systems the Civil Rights Acts were enacted to dismantle?

**I. Meta's Procedural Defects at Rule 12**

At Rule 12(b)(6), the Court accepts well-pled factual allegations as true, draws reasonable inferences for Plaintiff, and does not resolve factual disputes or credit extra-pleading narratives over the FAC. Applying that standard, Meta's motion does not squarely meet four dispositive points; for purposes of this motion, the FAC's allegations control.

**A.    Meta reframes the case as a generic "account termination" to force a § 230(c)(1) publisher frame.**

Meta's lead contention is that "all of Plaintiff's claims arise out of Meta's alleged termination of Plaintiff's Facebook account," characterizing the claims as "precisely the kind of activity for which [S]ection 230 was meant to provide immunity." This is not the complaint the Court must evaluate at Rule 12. The operative theory challenges Meta's own enforcement conduct and pipeline design—identity-visible final review at the decisional chokepoint, routing that yielded no CyberTip/NCMEC report after a CSE label, and Meta's ratification—not a mere dispute over publishing user "content."

**B.    Meta relies on extra-pleading materials for the truth of disputed facts.**

The motion attaches (and relies on) the Declaration of Michael Duffey and Meta's CSE policy as Exhibit A to imply a benign, nondiscriminatory rationale and to recast the enforcement as ordinary "content removal." Even as described by Meta, the cited policy states that Meta reports "apparent child exploitation" to NCMEC, while also removing content beyond statutory reporting criteria (e.g., "parents sharing nude images of their own children with good intentions"). Those materials cannot be used at Rule 12 to contradict well-pled allegations or to supply "good-faith" facts that the FAC disputes; the complaint's practice-level theory controls on the pleadings.

**C.    Meta rewrites FAC ¶ 48 into "posted advertisements" to manufacture a § 230 hook.**

To advance its publisher theory, Meta asserts that Plaintiff "first posted advertisements … between June 27–30, 2022," citing FAC ¶ 48. That is a reframing. The FAC alleges paid access to platform tools and marketing activity during that period; it does not hinge any claim on the content of "ads," and it challenges Meta's enforcement decisions after race was visible and a CSE label was applied without a law-enforcement report. On a motion to dismiss, Meta's re-characterization cannot narrow the FAC.

**D.    The motion identifies no violative content and is silent on any CyberTip for Plaintiff—despite invoking CSE.**

Meta does not identify a specific post or rule-violating material that triggered the CSE designation in Plaintiff's case, and the motion nowhere states that Meta submitted a CyberTipline report regarding Plaintiff. Instead, Meta points to general policy language and systemwide enforcement statistics. At Rule 12, the Court credits the FAC's non-report allegation and the pled pipeline

(identity-visible final review → chokepoint routing → non-report) rather than filling defense gaps with extra-record speculation.

These threshold defects—Meta's publisher reframing, reliance on declaration/policy exhibits for truth, re-labeling of FAC ¶ 48, and failure to identify violative content or a CyberTip for Plaintiff— are dispositive at the pleadings stage and require denial of the motion under the governing Rule 12 standard.

**II. The Well-Pleaded Allegations Foreclose Dismissal**

At Rule 12(b)(6), the Court accepts well-pleaded factual allegations as true, draws reasonable inferences for the plaintiff, and does not resolve factual disputes or credit extra-pleading narratives to contradict the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

**A.     What the FAC pleads against Meta (controlling at Rule 12)**

**1.     Baseless CSE invocation followed by Meta's ratification.**

The FAC alleges Meta invoked its "Child Sexual Exploitation" (CSE) policy against Plaintiff and—after a final human review—Meta ratified a permanent disablement. Meta's motion recasts that sequence as a generic "account termination," asserting that "all of Plaintiff's claims arise out of Meta's alleged termination of Plaintiff's Facebook account." Those allegations and Meta's framing are squarely joined; at Rule 12, the FAC's sequence controls. (FAC ¶¶ 49–52, 84.)

**2.     Race visibility at the decision point and same-day affirmation.**

The FAC pleads that the reviewer at the final step had access to identity-revealing materials (Plaintiff's profile photo and government ID), and that the disablement was affirmed within hours after identity became visible. (FAC ¶¶ 39–41, 50–51, 107–108.)

**3.     Comparator corroboration within the same enforcement family.**

The FAC pleads that white users processed through the same CSE enforcement family and vendor-staffed queues were restored while Plaintiff remained excluded—plausible circumstantial facts supporting discriminatory intent when combined with identity-visible decision-making. Meta's own motion cites the enforcement volume and reversal counts (e.g., ~105.9 million CSE actions; ~8,100

reversals), which underscore that disparity testing belongs in discovery, not at dismissal. (FAC ¶¶ 62–67, 99, 104.)

### 4.    No CyberTip/NCMEC report despite the CSE label.

The FAC pleads that the matter was routed through a workflow that did not result in any report to NCMEC; Meta's own policy materials (attached to its motion) acknowledge that removals may extend beyond statutory reporting—underscoring a discretionary design choice rather than a law-driven inevitability. (FAC ¶¶ 51, 97–101.) Meta's conduct during the Court-ordered preservation process further shows there is at least a factual dispute inappropriate for Rule 12: the joint status report memorializes that, at the October 31 meet-and-confer, Meta did not confirm that holds keyed to Plaintiff's identifier had been implemented and did not confirm the requested existence-level items.

These are concrete, chronological facts—not conclusions—and they govern at this stage.

### B.    These allegations foreclose Meta's Section 230(c)(1) framing at the pleadings stage

Meta's motion hinges on a publisher-immunity frame—treating this case as a challenge to "account termination" to fit § 230(c)(1). But the FAC targets Meta's own enforcement conduct and pipeline design: a race-visible final review at the decisional chokepoint; discretionary routing that yielded no NCMEC report after applying a CSE label; Meta's ratification of that outcome; and ongoing exclusion coupled with withholding of account-resident business property. Those duties arise from anti-discrimination and contracting law; they do not require treating Meta "as the publisher" of third-party content. (FAC ¶¶ 48–52, 62–67, 97–101, 104.) Meta's reliance on the Duffey declaration and policy exhibit to imply a benign, non-discriminatory rationale is extra-pleading advocacy that cannot displace the FAC at Rule 12.

### C.    Plausible intent and causation are alleged

Accepted as true, the pled sequence—identity-visible final review, same-day affirmation and disablement, no CyberTip despite the CSE label, and restoration of similarly situated white users—permits a reasonable inference of discriminatory purpose and a straightforward causal chain. Multiple but-for causes may coexist; Meta's post-hoc "other standards" speculation cannot rewrite the complaint at Rule 12. (FAC ¶¶ 37–41, 50–51, 63–67, 76–77, 97–101, 104, 107–108, 126.)

### D.    Record scope confirms dismissal is improper

Meta's motion leans on extra-record materials (a declaration and policy exhibit) and re-characterizes FAC ¶ 48 as "first posted advertisements" to force a publisher frame. Rule 12 confines the Court to the operative pleadings, properly noticed matters, and incorporated documents **not** used to prove disputed facts; it does not permit policy excerpts or labels to contradict the FAC's well-pled enforcement sequence. (FAC ¶ 48.)

Under Twombly/Iqbal, the FAC's pipeline-and-chokepoint allegations, the race-visibility facts, the absence of a CyberTip/NCMEC report despite a CSE label, and the comparator outcomes together cross the plausibility line and foreclose dismissal on Meta's § 230(c)(1) theory or on any effort to resolve intent and causation at the pleadings stage.

### III. Legal Standard & Record Scope

#### A.    Rule 12(b)(6) standard.

On a motion to dismiss, the Court accepts well-pleaded factual allegations as true, draws all reasonable inferences in the non-movant's favor, and evaluates plausibility—not the truth of competing factual narratives. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The same standard applies to a pro se litigant: the Court liberally construes the pleading but still asks whether the factual matter, taken as true, states a plausible claim. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010–11 (9th Cir. 2011). This Opposition proceeds under that settled framework and the operative First Amended Complaint ("FAC").

#### B.    Record scope at Rule 12: confined to the complaint, limited notice, and narrow incorporation—without using extra-record materials to prove disputed facts.

The Court's review is ordinarily confined to the complaint, documents properly incorporated by reference, and matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Judicial notice cannot be used to accept as true the factual assertions contained in noticed materials when those facts are disputed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). And the Ninth Circuit has repeatedly cautioned that neither judicial notice nor incorporation-by-reference may serve as a "back door" to smuggle new, contested facts into a Rule 12 record. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1008 (9th Cir. 2018). The

incorporation-by-reference doctrine is narrow: it applies only where the complaint "necessarily relies" on the document and its relevance and authenticity are not genuinely disputed. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881–82 (9th Cir. 2021); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). These guardrails prevent mini-trials on the pleadings. See also *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations in briefs are not part of the complaint). The same guardrails apply here.

### C.    Application to Meta's motion.

Meta attaches a counsel declaration and policy exhibit (the Duffey Declaration and Exhibit A) to advance benign explanations and a § 230 framing. Even if the policy's existence is noticed or the document is referenced for the fact of its publication, those materials cannot be credited for the truth of disputed matters or used to contradict the FAC's well-pleaded allegations at Rule 12. *Lee*, 250 F.3d at 689–90; *Khoja*, 899 F.3d at 998–1003. The Duffey Declaration purports to authenticate and summarize Meta's Community Standards/CSE policy and to attach a copy of that policy. That is not a license to import factual narratives about why Meta acted or to establish "good faith" on a cold Rule 12 record. The Court should disregard any attempt to use the declaration or policy exhibit to resolve contested merits issues.

Meta also leans on extra-pleading characterizations—e.g., recasting FAC ¶ 48 into "posted advertisements" to force a publisher-liability frame, or positing undefined "other standards" as an "obvious alternative explanation." Those are post-hoc hypotheses outside the pleadings. At Rule 12, the Court evaluates the claims Plaintiff pled, not defense speculation or re-labeling.

### IV.    Meta's "Advertisements" / "Other Content" Theories Are Extra Pleading And Cannot Defeat The FAC At Rule 12

At Rule 12, review is confined to the complaint, documents properly incorporated by reference, and matters suitable for judicial notice; a defendant may not inject new, disputed facts—or invite the Court to credit alternative factual hypotheses—to contradict well-pled allegations. See, e.g., the record-scope standards already set out in Plaintiff's opposition to Accenture's motion (judicial notice and incorporation-by-reference are narrow and cannot be used to "smuggle" merits facts or create a mini-trial at the pleadings stage).

### A.    Meta's "ads content" and "other content/standards" rationales are outside the pleadings.

Meta's motion turns on extra-record propositions about (i) the content of Plaintiff's advertising and (ii) non-CSE policies or "other content" rationales that could have justified the enforcement outcome. See, e.g., Meta's briefing relying on the Duffey declaration and Exhibit A to advance policy language and editorial justifications beyond the FAC's allegations. Meta reprises these points against the FAC, again invoking the same declaration and policy exhibit, and pressing that Plaintiff's claims fail because he does not detail the "content at issue" or Meta's broader Community Standards applications. Those are extra-pleading merits theories. The operative complaint does not rest on the substance of any advertisement; it pleads a discriminatory enforcement sequence: Meta invoked CSE on July 4, 2022; Accenture performed the identity-visible, final human review that affirmed the outcome; no CyberTip/NCMEC report issued; and white comparators within the same enforcement family were restored. At Rule 12, the Court evaluates that pled sequence—not defense narratives about what Plaintiff's "ads" supposedly contained or how unspecified "other" standards might have applied.

### B.    Meta's post-hoc reliance on policy text and alternative justifications confirms a live factual dispute, not a basis for dismissal.

Meta cites its CSE policy (via the Duffey declaration and RJN) to suggest that removal decisions may extend beyond statutory reporting and to posit benign, non-CSE explanations for the outcome. But whether those alternative explanations actually motivated the decision in Plaintiff's case is a factual merits issue. At this stage, the Court does not weigh competing explanations; the question is whether Plaintiff's well-pled account is plausible. The FAC's allegations—CSE label, identity-visible final review, same-day affirmation, no NCMEC report, and disparate comparator treatment—state a plausible claim. Extra-pleading hypotheticals about ad content or "other standards" cannot be credited to defeat that showing at Rule 12.

### C.    The Court should disregard the Duffey declaration and policy excerpts for the truth of disputed matters, and it may not consider new "ads" facts or merits inferences without conversion.

PLAINTIFF'S OPPOSITION TO META PLATFORM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Meta submitted a declaration and exhibits with both its initial and renewed Rule 12 motions, together with requests for judicial notice. Those materials cannot be used to contradict the FAC or to establish new, case-specific facts (e.g., what Plaintiff's "advertisements" contained; which non-CSE standards "really" drove the outcome). The narrow incorporation/judicial-notice doctrines do not permit importing factual gloss to resolve merits disputes on the pleadings. See Plaintiff's prior Section III (record scope) for the governing limits the Court should apply here as well. And because Meta's extra-record submissions invite factual adjudication, considering them would require conversion under Rule 12(d)—which is neither requested nor appropriate at this early stage given the live disputes Meta's own filings reveal.

**D.    The FAC's pled sequence controls on this motion.**

Meta does not dispute that the FAC alleges: (1) Meta "invok[ed] its CSE policy" to terminate the account on July 4, 2022; (2) Accenture's human reviewer affirmed the outcome after Plaintiff's identity-revealing materials were visible; (3) Plaintiff alleges no CyberTip/NCMEC report issued in his case; and (4) white comparators within the same enforcement family were restored while Plaintiff remained excluded. Those allegations must be accepted as true and are more than sufficient to preclude dismissal, irrespective of extra-pleading arguments about the substance of Plaintiff's advertisements or hypothesized "other content" violations. Meta's motion cannot use declarations, policy excerpts, or attorney argument to rewrite the operative complaint at Rule 12.

## V. Argument

### A.    Statute of Limitation (SOL)

#### 1.    § 1981 is timely under the federal four-year period.

Claims "made possible" by the Civil Rights Act of 1991—including post-formation interference with "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b)—are governed by the uniform four-year limitations period in 28 U.S.C. § 1658. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–84 (2004). Plaintiff's § 1981 counts fall squarely in that category: they challenge Meta's termination and refusal to restore the existing advertising account and the withholding of the benefits and privileges of Meta's paid advertising services—classic

post-formation and termination conduct covered by § 1981(b). See FAC ¶¶ 111–119 (formation and paid access June 27–30, 2022; permanent disablement on July 4, 2022; refusal to reinstate; loss of benefits/privileges of the advertising contracts).

The operative pleading alleges (i) an established contractual relationship for paid advertising and business tools; (ii) Meta's identity-visible, final-review affirmation of a permanent disablement on July 4, 2022; and (iii) an ongoing refusal to restore despite a written reinstatement demand on April 22, 2025—conduct that concerns the "performance, modification, and termination" of the parties' contracts and the "benefits [and] privileges" of those contracts. FAC ¶¶ 111–119. Under *Jones*, those § 1981 theories are governed by the federal four-year period and are timely because this action commenced on September 9, 2025—within four years of the July 4, 2022 termination and well within four years of the continuing refusal to reinstate. See Meta's own procedural recitation acknowledging the September 9, 2025 filing date.

Meta's across-the-board, two-year limitations argument misapprehends § 1981. In its motion, Meta asserts that "Plaintiff's federal civil rights causes of action (Counts 1–5) … are time-barred" by California's two-year personal-injury period and pegs accrual to July 4, 2022. That position may speak to other statutes, but it does not control § 1981 claims predicated on post-formation interference and termination/refusal to reinstate—the precise § 1981(b) conduct alleged here—because those claims arise under the 1991 amendments and carry § 1658's four-year period. *Jones*, 541 U.S. at 382–84. The FAC's allegations of termination and continued exclusion from the benefits and privileges of the advertising contracts (including a 2025 refusal to restore) bring Counts I–II within § 1981(b) and within the four-year window. FAC ¶¶ 111–119.

Accordingly, Meta's limitations defense cannot defeat the § 1981 claims at Rule 12.

### 2.    Continuing violation / discovery / equitable tolling.

Dismissal on statute-of-limitations grounds at Rule 12 is proper "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275–77 (9th Cir. 1993); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995). The Accenture opposition applies that same

Ninth Circuit standard and treats timeliness as a fact question when tolling or continuing-accrual inferences are plausibly pled—an approach that should be applied here to Meta's motion as well.

The FAC pleads later, discrete acts and present-tense exclusion beyond July 4, 2022: (i) an April 2023 attempt to re-register that Meta "promptly terminated"; (ii) discovery in 2024–2025 that white comparators processed through the same CSE enforcement family were restored (iii) ongoing third party contract interference; and (iv) withholding of account-resident business data and access through filing. FAC ¶¶ 85–90. Those allegations are pled expressly in the FAC and control at Rule 12. Meta's own motion acknowledges the April 2023 disablement (FAC ¶ 85) and the 2024–2025 comparator discovery (FAC ¶ 87), confirming these facts are joined, not disputed for purposes of the pleadings.

Taken as true, that chronology supports multiple timeliness doctrines at the motion-to-dismiss stage: (a) continuing violation/continuous accrual based on post-2022 acts and the ongoing exclusionary effect, and (b) equitable tolling/estoppel grounded in information asymmetry where Meta controls the key records (e.g., whether any CyberTipline report exists; internal "reportable/non-reportable" status; final-review/audit trail) and declined to confirm even existence-level facts during the October 31, 2025 court-ordered preservation conference. FAC ¶¶ 85–91; Email/Status Report (existence-only requests; no confirmation).

Meta cites accrual cases (e.g., *Lukovsky*) to argue the clock started in July 2022, but at Rule 12 those authorities do not permit a with-prejudice dismissal where the complaint plausibly alleges later disabling acts, ongoing exclusion, and delayed access to comparator and pipeline facts uniquely within Meta's control. That is precisely the scenario *Cervantes* and *Supermail Cargo* reserve for discovery rather than threshold dismissal.

### 3.    UCL is timely (four years).

California's Unfair Competition Law carries a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. The Accenture opposition applies § 17208 and confirms the UCL timeliness analysis for this case. The FAC's UCL allegations span 2022–2025 and seek forward-looking, practice-level relief (identity-masking at final review, audit logging, a narrow existence/date-only CyberTip

confirmation, and orderly return of account-resident business property). FAC ¶¶ 162–168, 169–187. That timeline and remedy posture fit comfortably within § 17208.

Accordingly, Meta's limitations challenge cannot defeat the UCL claim at Rule 12, and—consistent with Ninth Circuit guidance on tolling—cannot support a with-prejudice SOL dismissal on this record.

Meta's statute-of-limitations defense fails on the face of the pleadings and, under controlling Ninth Circuit standards, cannot support dismissal at Rule 12.

### B.    Causation

### 1.    The FAC plausibly pleads but-for causation as to Meta.

Section 1981 requires but-for causation, not sole causation. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020). "But-for" does not mean "only cause"; an event may have multiple but-for causes. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020); see also *Burrage v. United States*, 571 U.S. 204, 211–12 (2014). At Rule 12, the question is plausibility, not fact-finding. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

The FAC pleads a straightforward, identity-visible pipeline that reasonably supports but-for causation: (i) an Accenture "final human review" in which Plaintiff's race was visible (profile photo and submitted ID); (ii) a same-day affirmation/disablement; (iii) no NCMEC CyberTipline report notwithstanding the CSE label; and (iv) Meta's ratification of the outcome and continued exclusion. FAC ¶¶ 82–86, 88–91. Those allegations—accepted as true—permit the commonsense inference that Meta's enforcement architecture and ratification were at least a but-for cause of Plaintiff's loss of contract benefits and access to account-resident business property, which is all § 1981 requires at this stage. *Comcast*, 140 S. Ct. at 1019. They likewise satisfy UCL causation ("as a result of") by alleging economic loss flowing from Meta's challenged practices. See *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

### 2.    Ratification and chokepoint control sustain the causal chain; they do not sever it.

Meta suggests that any liability is broken by its own "review" or by alternative policy rationales. That contention is premature and legally incorrect on the pleadings. Where a decision-maker adopts or

relies on a tainted or discriminatory input at the decisional chokepoint, ratification does not sever proximate cause; it completes it. See *Staub v. Proctor Hospital*, 562 U.S. 411, 419–22 (2011) (employer liable where biased act is a proximate cause of the ultimate decision despite intervening review); *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) (same "cat's-paw" principle). Here, the FAC alleges that the identity-visible final review affirmed disablement and that Meta ratified and maintained the exclusion—i.e., Meta was both the platform decision-maker and the ratifier. FAC ¶¶ 82–86, 90–91. On those allegations, causation is plausibly pled; whether Meta's pipeline and ratification in fact caused the adverse outcome is a merits question for later stages, not Rule 12.

### 3.    No factual rewrite via "other standards."

Meta's suggestion that "other standards" (or some benign policy) might explain the disablement is an extra-pleading hypothesis. At Rule 12, Plaintiff's well-pled chronology controls, and the Court may not credit alternative factual narratives or extra-record policy gloss to contradict it. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–04 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001). The FAC—not Meta's "other standards" speculation—frames the causation inquiry on this motion: identity-visible final review at the chokepoint, same-day affirmation/disablement, non-report routing, and Meta's ratification and continued exclusion. FAC ¶¶ 82–86, 90–91.

The FAC plausibly alleges a race-aware enforcement sequence that satisfies but-for causation under controlling law, and Meta's ratification and alternative-policy speculation cannot sever or defeat that causal chain at the pleadings stage.

### C.    Intent / Comparators (Plausibility under Twombly/Iqbal)

At Rule 12, the Court credits well-pled facts and draws reasonable inferences for Plaintiff; a discrimination claim need not prove its case or negate every benign hypothesis to proceed. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The FAC pleads a specific sequence: identity-visible final review at the decisional chokepoint; same-day affirmation/disablement; no CyberTip/NCMEC report despite a CSE label; and restoration of similarly situated white users in the same enforcement family. Those pleaded facts—already framed in the

Accenture opposition and carried forward here—supply classic circumstantial indicia from which intent may be inferred at the pleading stage.

### 1. Race visibility at chokepoint supports inference of intent.

The FAC alleges that at the final step the reviewer had access to Plaintiff's profile photo and government ID, making race visible; within hours the CSE enforcement was affirmed and the account was disabled; no CyberTipline report issued. (FAC ¶¶ 39–41, 50–51, 107–108.) The sequence permits an inference of intent from circumstantial evidence. See *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266–68 (1977) (sequence of events and departures from expected procedures); *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99–101 (2003) (circumstantial evidence suffices). The Meta working draft already organizes these same identity-visibility and timing allegations under the controlling Rule 12 rubric; this section simply applies that record-scope frame to Meta.

### 2. Comparator allegations corroborate intent and are adequate at Rule 12.

The FAC further pleads that white users flagged under the same CSE enforcement family—processed through vendor-staffed queues—were restored, while Plaintiff remained permanently excluded. (FAC ¶¶ 62–67, 99, 104.) Comparator treatment is a classic way to show discriminatory purpose, and at the pleadings stage these allegations are sufficient to cross the plausibility line when combined with the decision-point visibility and non-report facts. The Accenture opposition squarely framed this same point; Meta's opposition outline likewise instructs that these comparators corroborate intent and underscore why disparities must be tested in discovery, not resolved on a motion to dismiss.

### 3. Meta's "knowledge-of-race" and "handful-of-comparators" attacks mischaracterize the FAC and cannot defeat plausibility at this stage.

Meta argues that "mere access" to photos (race knowledge) is insufficient and that Plaintiff identifies only a "handful" of white restorations out of larger enforcement volumes. But the FAC alleges more than knowledge: it alleges identity visibility at the moment of decision, same-day affirmation/disablement, a non-report workflow despite a CSE label, and similarly situated white users restored through the same enforcement family—facts that, taken together, plausibly support discriminatory purpose under Iqbal/Twombly. Meta's own motion invokes the large-scale enforcement

and reversal context (e.g., ~105.9 million CSE actions; ~8,100 reversals), which only confirms that disparity testing is a merits question for discovery rather than a basis for Rule 12 dismissal.

### 4. Accenture's written clarification supports an inference of pretext.

Co-defendant Accenture has confirmed in writing that its motion "does not suggest there was a CSE violation." Instead, Accenture now advances an "other standards" rationale. This clarification forecloses any claim that Meta was legally required to report Plaintiff's content to NCMEC—because without an actual CSE violation, there is no statutory trigger. The CSE label was therefore discretionary, not compelled by law. This supports a plausible inference of pretext and forecloses any "good faith" resolution at the pleadings stage. This Court should apply the same framework here as in the Accenture opposition: the CSE designation is pled as a pretextual label imposed absent any triggering violation, supporting intent and defeating immunity.

The FAC pleads a coherent, race-visible enforcement sequence and comparator disparity that plausibly supports discriminatory intent, and Meta's alternative hypotheses and minimization arguments cannot defeat that inference at Rule 12.

### D. Section 230

### 1. These claims do not treat Meta "as the publisher."

Meta's motion reframes the case as a generic "account-termination" dispute to force a § 230(c)(1) publisher/speaker theory ("all of Plaintiff's claims arise out of Meta's alleged termination … precisely the kind of activity for which § 230 was meant to provide immunity"). But the operative allegations target Meta's *own* enforcement architecture and conduct: identity-visible final review at a decisional chokepoint; race-aware ratification after Meta required and reviewed government ID; discretionary routing that yielded no NCMEC report despite the "CSE" label; and ongoing withholding of account-resident business data. Those duties arise from anti-discrimination and contracting law, not from publishing or failing to publish third-party content, and therefore fall outside § 230(c)(1).

Consistent with the Ninth Circuit's boundary in *Roommates.com*, § 230 protects traditional editorial acts regarding third-party content; it does not immunize a platform's distinct, *platform-conduct* duties (e.g., product/design, safety, or statutory-compliance choices) that exist independent of any obligation to publish or remove user speech. See, e.g., *Fair Hous. Council v.*

*Roommates.com, LLC*, 521 F.3d 1157, 1165–71 (9th Cir. 2008) (en banc); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851–52 (9th Cir. 2016) (failure-to-warn claim not barred); *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092–93 (9th Cir. 2021) (design-defect claim not barred). At Rule 12, the well-pled, sequence-based theory controls and defeats Meta's attempt to collapse these conduct-based claims into a publisher-immunity frame.

### 2. Meta's § 230 showing rests on extra-pleading facts that cannot be credited at Rule 12.

Meta's motion relies on a declaration (Duffey) and a policy exhibit (Ex. A) to inject merits-side narratives about how its CSE policy allegedly operates and why its enforcement was benign. Those materials are offered "for the truth" to contradict the FAC's sequence (identity-visible final review, non-report routing, comparator restorations). At Rule 12, that is impermissible. See *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–08 (9th Cir. 2018) (incorporation-by-reference cannot be used to resolve factual disputes). Meta's own notice confirms it is asking the Court to consider the Duffey declaration and exhibits alongside its § 230 theory; the Court should disregard those materials or else convert (which is inappropriate here). The outline governing this opposition flags that precise record-scope defect and directs that the well-pled practice-level sequence controls at Rule 12.

### 3. Even if § 230(c)(2) were reached, "good faith" cannot be resolved on the pleadings.

Section 230(c)(2) protects only *good-faith* moderation. Whether Meta acted in good faith is a fact question that cannot be decided at Rule 12 where the complaint plausibly alleges identity-visible decision-making, same-day ratification, a non-report workflow despite a CSE label, and restoration of similarly situated white users. See *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019) (good faith cannot be assumed where bad-faith or anti-competitive motive is plausibly alleged). The outline frames this point expressly: § 230(c)(2) "good faith" is not available on these facts.

The litigation record further undermines any "necessity" or good-faith premise. Accenture—Meta's enforcement vendor—has clarified in writing that its motion "does not suggest there was a CSE violation," undercutting any assertion that the CSE label here reflected a law-driven inevitability; that admission supports a plausible inference of pretext and forecloses any early good-faith determination.

The Accenture opposition already marked this sequence (insinuation → retreat to undefined "other standards") and explained why such evolution is incompatible with § 230 immunity at the pleadings stage.

### 4.    Meta's reliance on *Elansari v. Meta* is misplaced.

Meta cites *Elansari v. Meta* to suggest § 230 bars § 1981 claims, but that case was dismissed on standing grounds and any § 230 discussion was dicta—not a controlling holding. In any event, this action challenges Meta's own enforcement conduct and pipeline design, not publisher liability for Plaintiff's speech

Meta's § 230 theory cannot proceed on a record that violates Rule 12 and collapses under its own procedural weight.

### E.    § 1983 (State Action) — pled in the alternative

### 1.    Rule 12 posture.

Whether a private party's conduct is "fairly attributable to the State" is a fact-intensive inquiry assessed under joint-action and close-nexus/entwinement frameworks. At the pleadings stage, dismissal is improper where the complaint plausibly alleges discretionary, outcome-determinative participation at an operational chokepoint tied to state-facing processes. See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298–302 (2001); *Kirtley v. Rainey*, 326 F.3d 1088, 1092–95 (9th Cir. 2003). The outline directs this precise posture.

### 2.    Joint action is plausibly alleged.

The FAC alleges a pipeline in which identity-visible final human review and routing at the decisional chokepoint determined whether Plaintiff's matter entered the § 2258A → NCMEC reporting channel or a non-report workflow; Meta then ratified the outcome. FAC allegations also plead that Meta exercises discretion over which CSE-labeled actions are reported versus withheld, and that Plaintiff's matter was routed without a CyberTip report. Those facts plausibly allege "willful participation in joint activity" culminating in state-facing processes and are enough at Rule 12. See *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Lugar*, 457 U.S. at 937. See, e.g., FAC ¶¶ 29–33

(reporting discretion/scale), 48–52 (sequence and disablement), 97–101 (non-report), 104–108 (final review/ratification).

Meta's contrary briefing—which portrays the disablement as purely private and insists there is no "interdependence" with state processes—asks the Court to resolve factual disputes against the FAC and to treat the reporting pipeline as legally irrelevant to the challenged decision. That is not a Rule 12 determination.

### 3.    Close nexus/entwinement is a fact question.

The FAC pleads identity-visible review at an operational chokepoint that dictates whether state investigative processes are triggered (report) or not (non-report). Whether that operational integration is "so far insinuated" as to be fairly attributable to the State cannot be resolved on the pleadings. *Brentwood*, 531 U.S. at 298–302; *Kirtley*, 326 F.3d at 1094–95. This is the same scaffold the Court has already been presented in Plaintiff's opposition to Accenture's motion (final-step routing; Meta ratification), and it warrants the same Rule 12 result here.

### 4.    O'Handley and Rosenow are inapposite on these allegations.

Meta leans on *O'Handley* and *Rosenow* to argue that merely complying with a statute or receiving government input does not make a platform a state actor. True—but the FAC does not rely on bare compliance or advisory flagging. It alleges discretionary, outcome-determinative routing at the chokepoint (after race visibility) that controlled whether Plaintiff's matter entered the § 2258A reporting pipeline, followed by Meta's ratification—precisely the case-specific integration the Ninth Circuit left to facts, not Rule 12 dismissal. See *O'Handley v. Weber*, 62 F.4th 1145, 1155–60 (9th Cir. 2023); *United States v. Rosenow*, 50 F.4th 715, 730–33 (9th Cir. 2022).

### 5.    Procedural posture—threshold fact reserved to discovery.

Meta has declined to confirm whether a CyberTipline report exists for the July 4, 2022 enforcement while relying on CSE rhetoric in its motion. Plaintiff has already sought a narrow, discovery-neutral stipulation (existence/date-only) or, alternatively, a short custodian declaration. On this record, Count IV should proceed, or at minimum be denied without prejudice pending that limited confirmation.

Because the FAC plausibly alleges joint action and close nexus under controlling standards, dismissal is unwarranted at Rule 12.

**F.     § 1985(3) (Conspiracy)**

**1.     Rule and standard.**

A § 1985(3) claim requires: (1) a conspiracy; (2) to deprive equal protection or equal privileges; (3) an overt act; and (4) injury—plus class-based, invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 101–03 (1971); *Scott v. Ross,* 140 F.3d 1275, 1284 (9th Cir. 1998). Agreement may be inferred from circumstantial facts; the plausibility inquiry is governed by Rule 8 and Twombly/Iqbal, not a summary-judgment standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1301 (9th Cir. 1999).

**2.     Application.**

The FAC pleads coordinated steps within a unified enforcement pipeline: (i) an identity-visible final human review and routing decision at the chokepoint; (ii) Meta's retention of override authority and ratification of the outcome; and (iii) a non-report workflow despite a CSE label—followed by disparate outcomes in the same enforcement family (white users restored; Plaintiff permanently excluded). Taken together, these are classic "plus factors" that plausibly allow the inference of a meeting of the minds and race-based animus at Rule 12. See *Mendocino*, 192 F.3d at 1301 (agreement inferable from concerted action); *Gilbrook v. City of Westminster,* 177 F.3d 839, 856 (9th Cir. 1999) (concerted steps within shared workflow suffice).

**3.     Overt acts and injury.**

The overt acts include the identity-visible final review, the routing determination (NCMEC vs. non-report), and Meta's ratification and continued exclusion; the injuries are concrete (loss of platform access, business interference, and ongoing deprivation of property and privileges tied to account access). *Scott*, 140 F.3d at 1284.

**4.     Response to Meta's objection.**

Meta's contention that the allegations describe only an "ordinary business relationship" fails at Rule 12, where the Court credits the FAC's specific chronology and reasonable inferences. The

coordinated, sequential workflow—culminating in Meta's ratification and disparate results—pleads more than parallel conduct and suffices to proceed. *Twombly*, 550 U.S. at 555, 570; *Iqbal,* 556 U.S. at 678–79.

### G.    UCL (Unlawful / Unfair / Fraudulent)

#### 1.    Unlawful.

The UCL "borrows" predicate violations and makes them independently actionable. Because the FAC plausibly pleads federal civil-rights violations (§§ 1981, 1982, 1983, 1985(3)), the "unlawful" prong survives if any federal claim survives. *Davis v. HSBC Bank Nev.,* N.A., 691 F.3d 1152, 1168–69 (9th Cir. 2012).

#### 2.    Unfair.

Under either accepted formulation (tethered to policy or balancing), the FAC alleges an unfair practice: (i) identity exposure at the decision point; (ii) discretionary routing at the enforcement chokepoint; (iii) no CyberTip/NCMEC report despite a CSE label; and (iv) continuing exclusion that withholds business property (account and advertising access). Those facts plausibly tether to legislatively expressed anti-discrimination policy and describe substantial, ongoing injury with no countervailing utility that can be resolved on the pleadings. *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 735–36 (9th Cir. 2007).

#### 3.    Fraudulent (if reached).

The FAC pleads practice-level deception: a mismatch between the stated CSE label and a non-report workflow, followed by a litigation-stage shift to "other standards." That theory is actionable where a practice is likely to deceive. See *Davis,* 691 F.3d at 1169. If the Court prefers reliance particulars targeted to Meta for money-or-property standing, Plaintiff requests focused leave to amend solely as to the fraudulent prong while preserving the independently sufficient unlawful and unfair prongs. See *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–27 (2011).

#### 4.    Remedies (Sonner).

Plaintiff seeks forward-looking public injunctive relief directed at structural practices—identity masking at final review, audit-logging of routing decisions, transparency dashboards, and an existence/date-only CyberTip confirmation mechanism. Those remedies are not available at law;

damages cannot redress ongoing design-level harms or prevent future injuries. The FAC alleges the absence of an adequate remedy at law, satisfying Sonner's requirement for equitable relief. *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020).

At minimum, the unlawful and unfair prongs proceed; if the Court reaches the fraudulent prong and prefers reliance particulars, grant targeted leave to amend without prejudice to the remaining prongs.

## VI. Procedural Notes / Hearing Frame

Meta's motion must be evaluated solely on the face of the operative First Amended Complaint and the Rule 12 record. Its submission of declarations and exhibits asserting compliance mechanisms or policy rationales exceeds the scope of Rule 12(b)(6) and should be disregarded. To the extent Meta invokes its "CSE" designation to suggest legal compulsion, that characterization raises a factual dispute not appropriate for resolution at this stage—particularly given the statutory penalties tied to non-reporting under 18 U.S.C. § 2258A.

## VII. Remedy & Relief

Meta's motion imagines a pleading Plaintiff did not file. Deny the motion in full.

### CONCLUSION

Meta invoked the nuclear option of platform policy enforcement—child sexual exploitation—against a Black business owner, then failed to report the allegation to law enforcement. That decision left only two possibilities: either Meta violated 18 U.S.C. § 2258A by failing to report an "apparent" instance of child exploitation, or it weaponized the gravest accusation in digital life as racial pretext. There is no third option. When platforms brand users with the digital scarlet letter—CSE—and then bypass the legal process designed to validate such claims, child protection is no longer the aim; it becomes the means of discrimination. On July 4, 2022, Plaintiff did not lose his account. He lost his access to the digital economy under a pretext Meta would not dare use to justify permanent exclusion of white users—and did not. This is not content moderation. It is algorithmic redlining executed through human discretion, concealed behind Section 230, and enforced without accountability.

In this Court, it ends.

1    Under Rule 12, the Court must credit the FAC's well-pled chronology and draw all reasonable

2 inferences in Plaintiff's favor; it may not resolve factual disputes or rely on declarations and policy

3 exhibits offered for their truth. *Iqbal*; *Twombly*; *Starr*; *Lee*; *Khoja*. On these allegations—identity-

4 visible final review, same-day ratification of a "CSE" designation, non-report routing despite the

5 statutory duty, and restoration of white comparators—dismissal is foreclosed. Section 230(c)(1) does

6 not shield discriminatory enforcement architecture, and § 230(c)(2)'s "good faith" safe harbor

7 collapses where the complaint pleads pretext through the CSE-without-report paradox.

8 *Roommates.com* (en banc); *Internet Brands*; *Lemmon*; *Enigma*. The FAC plausibly alleges but-for

9 causation through Meta's own ratification of a race-visible outcome, with § 1981 claims timely under

10 28 U.S.C. § 1658 and equitable relief available under *Sonner*. *Comcast*; *Staub*; *Poland*; *Jones*; *Sonner*.

11    The motion should be denied.[1]

12

13 Dated: November 12, 2025                                    Respectfully submitted,

14

15                                                            */s/Marvelle J. Ballentine*

16                                                            Marvelle J. "Jay" Ballentine
17                                                                       Plaintiff, pro se

18

19

20

21

22

23

24

25

26

27

28 [1] Plaintiff humbly apologizes for the incorrect spelling of the Honorable Judge Breyer's given name on the Caption Page for in his Opposition to Accenture's Motion to Dismiss.

PLAINTIFF'S OPPOSITION TO META PLATFORM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT