Marvelle J. "Jay" Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, pro se

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MARVELLE J. "JAY" BALLENTINE,

    Plaintiff,

v.

META PLATFORMS, INC., and

ACCENTURE LLP,

    Defendants.

**Case No.: 3:25-cv-07671-CRB**

**DECLARATION OF MARVELLE J. BALLENTINE IN SUPPORT OF**

**MOTION TO TRANSFER VENUE**

I, Marvelle J. "Jay" Ballentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

## I. PERSONAL BACKGROUND AND DOMICILE

1. I am the Plaintiff in this action and submit this declaration in support of my motion to transfer this action to the Middle District of Florida.

2. I am domiciled in Clermont, Lake County, Florida. My mailing address is 7862 W. Irlo Bronson Memorial Highway #82, Kissimmee, FL 34747.

3. At all times relevant to the claims in this action, I operated a mobile RV repair business serving customers in Florida and surrounding states.

4. The economic injuries I allege—including loss of business relationships, destruction of commercial property, exclusion from digital commerce platforms, and exclusion from continuing education—were suffered in Florida, where I reside and conduct business.

## II. THE ENFORCEMENT EVENT AND SUBSEQUENT LITIGATION CONDUCT

**A. The July 4, 2022 Enforcement Event**

5.      On July 4, 2022, Meta invoked its Child Sexual Exploitation ("CSE") policy against my account and requested identity verification as a precondition to final human review. I submitted my U.S. passport.

6.      The vendor defendant conducting the review had my government-issued identification and profile photograph visible during review and was authorized to validate or invalidate Meta's invocation of its CSE policy.

7.      Within hours of receiving my identification, the reviewer ratified the permanent termination and routed the matter through a workflow that did not result in a report to the National Center for Missing and Exploited Children ("NCMEC").

8.      The identity of the specific vendor that performed the final human review of my account is within Defendants' exclusive possession.

**B. Accenture's Assertions Regarding a "Legitimate" Violation**

9.      On October 16, 2025, Accenture LLP filed its first motion to dismiss in this action. (Dkt. 33.) The motion stated that "a legitimate community standards violation by Ballentine—is consistent with the facts." The filing did not identify any content I allegedly posted, any community standard I allegedly violated, or any factual basis for the assertion.

10. On October 28, 2025, Accenture's counsel, Devin S. Anderson of Kirkland & Ellis LLP, sent me a written communication. In that communication, Anderson quoted from the first motion and stated that Accenture's argument "expressly accepts as true" the complaint's assertion that there was no CSE violation. Anderson stated that Accenture would "include language reinforcing this point" in its forthcoming motion to dismiss.

11. On October 31, 2025, Accenture filed its second motion to dismiss. (Dkt. 40.) The filing changed the language from "a legitimate community standards violation by Ballentine" to "a legitimate violation of another community standard unrelated to CSE." The second motion did not identify any specific community standard that I allegedly violated, any specific content that I allegedly posted, or any factual basis for the revised assertion.

12. The sequence is as follows: Accenture first asserted a "legitimate" violation in connection with CSE; Accenture's counsel then acknowledged in writing that there was no CSE violation; and Accenture then filed a second motion asserting a "legitimate" violation of an unspecified "other" standard—again without identifying any content, standard, or factual basis.

13. These assertions remain on the public docket and have not been clarified or withdrawn.

14. I disclosed in the original complaint, which Accenture's counsel reviewed before filing the first motion, that I am a survivor of childhood sexual abuse. The first motion used CSE terminology in close proximity to my name at least nine times.

## C. The Related Florida Action

15. On February 9, 2026, I filed an action in the Middle District of Florida, Case No. 6:26-cv-00286-AGM-DCI, against Accenture LLP, Devin S. Anderson, Kirkland & Ellis LLP, and Meta Platforms, Inc.

16. On February 11, 2026, I filed a First Amended Complaint in the Florida action adding Christopher W. Keegan as a defendant in his individual capacity.

17. The Florida action arises from the statements described in paragraphs 9 through 14 of this declaration. Meta Platforms, Inc. and Accenture LLP are defendants in both this action and the Florida action.

## III. DISCOVERY HISTORY

## A. Plaintiff's Efforts to Initiate Discovery

18. I filed the original complaint on September 9, 2025. The Court set an Initial Case Management Conference ("CMC") for December 12, 2025.

19. On September 18, 2025, the case was reassigned to Judge Charles R. Breyer, and a new CMC was set for December 19, 2025.

20. On October 17, 2025, after the Magistrate Judge ordered the parties to meet and confer on preservation by October 31, 2025 (Dkt. 25), I proposed consolidating the court-ordered preservation meet-and-confer with a Rule 26(f) conference. I offered Defendants an extension of their deadline to respond to the First Amended Complaint in exchange. Defendants declined to consolidate.

21. On October 20, 2025, Meta's counsel responded that a Rule 26(f) conference was "premature" given the Court's vacatur of the CMC upon notice of Defendants' intent to file dispositive motions.

22. On October 28, 2025, I filed an administrative motion requesting a discovery-management scheduling directive permitting a Rule 26(f) conference while motions to dismiss were pending. (Dkt. 36.)

23. On November 10, 2025, the Magistrate Judge *denied my administrative motion for a discovery-management scheduling directive with prejudice.* (Dkt. 47.)

24. On November 19, 2025, the CMC was vacated. (Dkt. 51.) As of this declaration, no CMC has been reset.

25. No Rule 26(f) conference has occurred. Discovery has not opened. I have been unable to obtain through formal discovery the identity of the specific vendor that performed the final human review of my account.

## B. The Court-Ordered Preservation Meet-and-Confer

26. On October 14, 2025, the Magistrate Judge ordered the parties to meet and confer on Plaintiff's preservation motions by October 31, 2025, and to file a joint status report by November 4, 2025. (Dkt. 25.)

27. On October 24, 2025, I provided Defendants with an account identifier (email address) for preservation scoping and requested confirmation that litigation holds and collection locks had been implemented using that identifier.

28. On October 24, 2025, I requested that the October 31 preservation meet-and-confer be conducted in two sequential, defendant-specific sessions—Meta first, then Accenture—to ensure parity for a self-represented litigant and to focus discussions on defendant-specific systems and preservation categories. I requested that Defendants state their position on format and identify any rule or order requiring a single joint session.

29. On October 28, 2025, Accenture stated it saw no reason for separate sessions and took the position that the meet-and-confer should be combined with all parties present.

30. On October 31, 2025, Meta circulated a meeting invitation for the preservation meet-and-confer without providing separate defendant-specific session details. I confirmed attendance and renewed my request for sequential segments. Defendants declined.

31. The meet-and-confer proceeded in a joint format. I participated as a self-represented individual in a single session with counsel for two corporate defendants simultaneously. Defendants did not confirm implementation of litigation holds keyed to the identifier I had provided. Defendants did not confirm preservation of specified existence-level audit and telemetry categories. Defendants did not provide written positions on a narrow stipulation or declaration concerning CyberTipline existence and date.

32. On November 10, 2025, the Magistrate Judge denied my preservation motions (Dkts. 21, 22) without prejudice. (Dkt. 47.)

**C. Summary of Procedural Dispositions**

33. Every request I have initiated has been denied: (a) my motion to shorten time for the CMC (Dkt. 20) was denied; (b) my motions for preservation orders (Dkts. 21, 22) were denied without prejudice; (c) my administrative motion for a Rule 26(f) scheduling directive (Dkt. 36) was denied with prejudice; and (d) my motion to shorten time on the administrative motion (Dkt. 37) was denied with prejudice.

34. By contrast, Defendants have received: (a) extensions of time to respond and to file replies, granted by stipulation and order (see, e.g., Dkts. 49–50); and (b) vacatur of the CMC pending dispositive motion practice (Dkt. 51).

35. As of this declaration, the case has been pending for over five months. No Rule 26(f) conference has occurred, discovery has not opened, and the CMC remains vacated.

## IV. HEARING SCHEDULE CHANGES AND COSTS INCURRED

36. On October 31, 2025, Defendants' motions to dismiss noticed an in-person hearing for January 30, 2026 at 10:00 a.m. in Courtroom 6, 17th Floor, San Francisco. (Dkts. 40, 41.)

37. Based on the noticed format, I made travel and lodging arrangements, including airline tickets and hotel reservations, for the January 30, 2026 hearing.

38. On January 8, 2026, I informed defense counsel and the Courtroom Deputy in writing that I had arranged travel and lodging for the January 30, 2026 in-person hearing based on the noticed format, and I requested that any format change be reflected by a docketed entry.

39. On January 8, 2026, the Courtroom Deputy responded that civil law and motion matters are conducted by Zoom and that, if the Court had not ruled on the motions prior to January 30, 2026, the hearing would be reset to a date in February.

40. On January 20, 2026, the Clerk vacated the January 30, 2026 hearing and reset the motions hearing to February 13, 2026 at 10:00 a.m. via Zoom webinar. (Dkt. 55.) I am not aware of any motion or stipulation requesting this change.

41. I was unable to obtain full refunds for the travel and lodging arrangements I had made for the January 30, 2026 hearing. I incurred non-recoverable out-of-pocket costs as a result of the format change.

42. On February 9, 2026, the hearing was moved from February 13, 2026 to February 20, 2026. A text-only docket notice reflects this change. (Dkt. 57.) *I am not aware of any motion or stipulation requesting this change.*

43. In total, the hearing on Defendants' motions to dismiss has been continued or reformatted three times: from in-person on January 30 to Zoom on February 13, then from February 13 to February 20. To my knowledge, none of these changes was preceded by noticed motion practice.

## V. ATTEMPTS AT RESOLUTION

44. **First attempt.** On September 30, 2025, I proposed to defense counsel, among other options, a stipulation to suspend Rule 12 motion practice and proceed to mediation. On October 3, 2025, Meta's counsel responded that mediation would not be productive. On October 4, 2025, Accenture's counsel stated Accenture's position was the same as Meta's.

45. **Second attempt.** On December 5, 2025, I sent Accenture's counsel a written settlement proposal with an acceptance deadline of January 23, 2026. Accenture did not respond by that deadline. On January 10, 2026, I sent Meta an invitation to discuss resolution frameworks and requested a written response by January 16, 2026 at 5:00 p.m. Pacific Time. I received no response by that deadline.

46. **Third and final attempt.** On February 9, 2026, I proposed to defense counsel a joint stipulation to continue the February 13, 2026 hearing by approximately five weeks and to conduct the Rule 26(f) conference within 21 days of execution.

47. I have made three sequential attempts to pursue a constructive resolution pathway. Each attempt was either declined or met with no response. I did not seek transfer before exhausting these efforts.

### VI. BURDEN OF LITIGATING IN CALIFORNIA

48. I am proceeding pro se. I am not represented by counsel.

49. Litigating this case in California, while domiciled in Florida, imposes substantial burdens, including travel costs for any in-person proceedings, time zone differences affecting communication with the Court and opposing counsel, and the logistical difficulties of managing litigation across the country without counsel.

50. These burdens are not abstract. As described in Section IV, I incurred in non-recoverable costs from a single hearing-format change. As described in Section III.B, my request for a procedural accommodation during the court-ordered preservation meet-and-confer—sequential, defendant-specific sessions to ensure parity as a self-represented party—was declined by Defendants, and I was required to participate in a joint session with counsel for two corporate defendants simultaneously.

51. Defendants Meta Platforms, Inc. and Accenture LLP are represented by national law firms—Orrick, Herrington & Sutcliffe LLP and Kirkland & Ellis LLP, respectively—with offices in multiple jurisdictions, including Florida. Transfer to the Middle District of Florida would not impose a comparable burden on Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: February 12, 2026                    */s/ Marvelle J. Ballentine*

                                                                                                    MARVELLE J. "JAY" BALLENTINE

                                                                                                                                   Plaintiff, *pro se*